Versión para imprimir



EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Carmen García Fantauzzi<br><br>        Recurrida<br><br>                    v.<br><br>Directora Administrativa de los Tribunales<br><br>        Peticionarios | Certiorari<br><br>2011 TSPR 115<br><br>182 DPR _____ |

Número del Caso: CC        - 2007 - 280

        Fecha: 8 de agosto de 2011

Tribunal de Apelaciones:

        Región Judicial de San Juan

Juez Ponente:
        Hon. José M. Aponte Jiménez

Oficina de Administración
de los Tribunales:

        Lcda. María Victoria López Menéndez

Abogado de la Parte Recurrida:

        Lcdo.    Santos Rivera Martínez

Materia:     Revisión Administrativa Procedente de la Junta de Personal de la Rama Judicial

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilació    n y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Carmen García Fantauzzi

 Recurrida

   v.       CC-2007-280    Certiorari

Directora Administrativa de
los Tribunales

 Peticionaria

SENTENCIA

San Juan, Puerto Rico, a 8 de agosto de 2011.

En el recurso de epígrafe nos corresponde determinar si el Tribunal de Apelaciones actuó correctamente al revocar una determinación de hecho de una resolución administrativa emitida por la Junta de Personal de la Rama Judicial y, asimismo, al revocar dicha decisión administrativa en su totalidad. Así, pues, por considerar que la decisión administrativa procede en derecho, revocamos la Sentencia emitida por el Tribunal de Apelaciones.

I

La Sra. Carmen A. García Fantauzzi se desempeñaba como coordinadora del Programa de

Ayuda al Empleado (PAE) de la Oficina de Administración de los Tribunales (OAT). Como parte de sus funciones, ésta tuvo que atender una situación que ocurrió en la oficina de alguaciles del Centro Judicial de Aguadilla. En esa ocasión entrevistó a varios empleados, entre ellos al alguacil Carlos Rivera López. A petición de este último, la señora García Fantauzzi preparó una comunicación escrita en la que describió los hallazgos producto de su entrevista con éste.[1] En dicha misiva también incluyó la información médica personal del propio alguacil y que era pertinente al asunto en cuestión.

No obstante, la señora García Fantauzzi, en lugar de hacer llegar la carta al alguacil Rivera López, la hizo llegar a la Directora Ejecutiva del Centro Judicial de Aguadilla, la Sra. Astrid Otero Pereles. Debido a que la carta contenía información médica y confidencial del empleado, la Directora se orientó con la Oficina de Recursos Humanos de la OAT donde le recomendaron destruir la comunicación. Posteriormente, el alguacil Rivera López examinó copia del informe que la señora García Fantauzzi había preparado y expresó su molestia porque se le había violado su expectativa de confidencialidad. Además, señaló que nunca más volvería a utilizar los servicios del PAE.

Por otro lado, con relación a los mismos hechos por los cuales el alguacil Rivera López había requerido los

---

[1] El empleado interesaba acudir al Fondo del Seguro del Estado a solicitar tratamiento médico y deseaba utilizar la carta del Programa de Ayuda al Empleado como fundamento para su solicitud.

servicios del PAE, la señora García Fantauzzi entrevistó a la Sra. Mercedes Colón Vera, empleada también del Centro Judicial de Aguadilla. Como resultado de esa entrevista, la señora García Fantauzzi preparó una comunicación en la que recomendó trasladar a la empleada afectada por causa de cierta situación en el lugar de trabajo. Más adelante, la señora Colón Vera llegó a la oficina de la Directora Ejecutiva del Centro Judicial de Aguadilla con copia de dicha comunicación, la cual le había llegado mediante correo ordinario a su residencia. En ese momento, la Directora Ejecutiva no había recibido copia de dicha comunicación, la cual recibió ese mismo día por la tarde. A raíz de estos hechos, la Directora Ejecutiva envió carta a la Oficina de Recursos Humanos de la OAT en la que expresó que en una futura ocasión apreciaría que se le notificara prontamente la correspondencia relacionada con sus empleados. Además, solicitó que en el futuro, se incluyera en la carta el nombre de las personas a quienes se les hubiera enviado copia de la misma.

En otra ocasión, el 17 de abril de 2002, la señora García Fantauzzi fue enviada a prestar ayuda en una situación laboral en el Tribunal de Menores del Centro Judicial de Bayamón. En esa gestión la señora García Fantauzzi entrevistó sólo a una de las tres empleadas envueltas en la situación, la señora Mildred Camacho. A raíz de dicha entrevista, la señora García Fantauzzi preparó un informe en el que recomendó el traslado de las

empleadas, incluyendo a la supervisora de éstas. Concluyó que la señora Camacho era el foco de la discordia por su asertividad en su espacio de trabajo debido a que era la persona más capacitada allí. La señora García Fantauzzi remitió copia de dicho informe a su supervisora, la señora Haydée Enríquez Maeso (Supervisora). Posteriormente, la señora Camacho llamó a la Supervisora con el fin de solicitarle copia del informe preparado por la señora García Fantauzzi en relación con su caso y como producto de la entrevista que ésta le realizó. Antes de responder la petición de la empleada, la Supervisora decidió reunirse con la señora García Fantauzzi para discutir el caso. Decidió que por las declaraciones que éste contenía, el informe no debía ser divulgado ni incluido en el expediente de la empleada entrevistada. Finalmente, la Supervisora denegó la solicitud de la señora Camacho, notificándole que no existía un documento que tuviese determinaciones ni recomendaciones.

No obstante lo anterior, la señora Camacho insistió en su petición, esta vez ante la Directora de la Oficina de Recursos Humanos de la OAT, la señora María G. Colón (Directora). En dicha petición señaló que la señora García Fantauzzi le había confirmado la existencia de tal informe con determinaciones y recomendaciones en relación con su caso. En consecuencia, la Directora se reunió con la señora Camacho y las otras dos empleadas envueltas en el conflicto laboral. Posteriormente, se reunió con la señora García

Fantauzzi y su supervisora. La Directora leyó el informe de la señora García Fantauzzi y en la misma reunión expresó que estaba en total desacuerdo con el contenido del informe. Indicó que luego de entrevistar a todas las personas envueltas en la situación, entendía que el informe y sus recomendaciones eran erróneos. Acto seguido, la Directora de Recursos Humanos removió el informe del expediente de la señora Camacho, lo retuvo y lo colocó en un archivo bajo llave.

Posteriormente, la Directora envió una carta al Lcdo. Oscar González Rivera, quien había asumido la representación legal de la señora Camacho, notificándole que el informe preparado por el PAE era confidencial pues el mismo contenía información relacionada con otros empleados. Expresó además, que la OAT no tenía la obligación de divulgarlo pues éste no sería utilizado para tomar alguna determinación que afectara a la señora Camacho. La Directora también cursó copia de dicha misiva a la señora Camacho, junto a una breve carta.

Días después, la señora Camacho llamó a la oficina de la Directora y, en tono burlón y cínico, le dio las gracias a su secretaria por haberle hecho llegar copia del informe que antes le habían negado. La secretaria le expresó que ella misma había preparado el sobre que se le había enviado y que éste sólo contenía copia de la carta enviada al licenciado González Rivera y la carta que la Directora dirigió a ella. La señora Camacho expresó que en el sobre,

enviado por correo ordinario, se había incluido copia del informe.

Así las cosas, la OAT inició una investigación administrativa sobre el desempeño profesional de la señora García Fantauzzi. La OAT le notificó mediante carta el inicio de ésta y le indicó específicamente que: "[e]stos hechos [refiriéndose a los del caso de la señora Camacho] **junto a otras conductas observadas por usted en el pasado**, podrían ser constitutivos de un patrón de conducta de insubordinación". (Énfasis suplido.) La notificación antedicha contenía las disposiciones reglamentarias en las que se amparó la agencia al conducir la investigación, así como la información relativa a la celebración de una vista informal como parte del proceso investigativo.

Luego de la celebración de la vista, la Directora Administrativa de la OAT suspendió de empleo y sueldo a la señora García Fantauzzi por el periodo de cinco días y la transfirió a un puesto administrativo en el área de archivo de documentos cuya escala salarial era equivalente a la del puesto anterior. La señora García Fantauzzi solicitó revisión de dicha determinación ante la Junta de Personal de la Rama Judicial (Junta), la cual confirmó la sanción impuesta. En lo que respecta al evento con la señora Camacho, la Junta determinó que el sobre que alegadamente contenía el informe y que fue recibido por la señora Camacho, había sido enviado mediante correo ordinario y había requerido la cancelación de un sello postal de $0.37.

Así, pues, la oficial examinadora, en su investigación, calculó el peso de los documentos que -según el testimonio de la señora Camacho- habían sido incluidos en el sobre. De acuerdo con el cálculo, el sobre que contuviera dichos documentos tenía que haber cancelado $0.60 y ello no concordaba con los $0.37 que canceló el sobre enviado.

A raíz de tal determinación y al considerar que la señora García Fantauzzi había retenido copia del informe en el archivo de su computadora, la oficial examinadora concluyó que ésta fue quien le envió el informe a la señora Camacho y que ambas habían mentido al testificar lo contrario en el procedimiento administrativo.

Por no estar de acuerdo con la determinación de la Junta, la señora García Fantauzzi acudió ante el Tribunal de Apelaciones en solicitud de revisión administrativa. El foro apelativo intermedio determinó que la conclusión de la Junta, a los efectos de que la señora Camacho mintió en cuanto al contenido del sobre que le envió la Directora de Recursos Humanos de la OAT no era suficiente para concluir que la señora García Fantauzzi era la que lo había hecho llegar a la señora Camacho. Ello en vista de que otros funcionarios de la OAT habían tenido acceso al informe. Por consiguiente, el Tribunal de Apelaciones revocó la decisión de la Directora Administrativa de la OAT, por lo que dejó sin efecto la suspensión de empleo y sueldo y la orden de traslado de la señora García Fantauzzi.

Inconforme con dicha determinación, la OAT acudió ante este Tribunal y señala la comisión de los errores siguientes:

> Erró el Tribunal Apelativo al revocar [a] la Junta de Personal y dejar sin efecto la medida disciplinaria que estaba basada en tres incidentes, cuando únicamente se discute en la sentencia uno de los incidentes.

> Erró el Tribunal Apelativo al revocar [a] la Junta de Personal y dejar sin efecto determinaciones de hecho[,] sin haber requerido que se produjera la apelación en el apéndice, sin haber considerado la totalidad de la prueba presentada, revisado la transcripción de las vistas y al sustituir el juicio sobre credibilidad de los testigos que hizo la examinadora de la Junta de Personal de la Rama Judicial.

> Erró el Tribunal de Apelaciones al determinar que fue parte de la acción disciplinaria el trasladar a la apelante a un puesto de oficinal administrativo II.

## II

De entrada, es importante señalar que las disposiciones de la Ley de Procedimiento Administrativo Uniforme (L.P.A.U.), Ley 170 del 12 de agosto de 1988, 3 L.P.R.A. sec. 2101, no le aplican a la Rama Judicial.[2] No obstante, hemos establecido que el procedimiento a seguir ante el foro judicial será uno similar al utilizado cuando un tribunal, actuando como foro apelativo, revisa la corrección o incorrección de la sentencia emitida por un tribunal inferior o la decisión de un organismo administrativo.[3]

---

[2] Rivera v. Dir. Adm. Trib., 144 D.P.R. 808, 820 (1998).

[3] Íd., págs. 821-822.

Ahora bien, es principio reiterado que al revisar una decisión administrativa, los tribunales apelativos debemos conceder gran consideración y deferencia a las decisiones de las agencias administrativas, ello a base de las experiencias y conocimientos especializados sobre los asuntos que se les han delegado.[4] El alcance de esa revisión judicial es limitado y suele comprender tres áreas: (1) que el remedio concedido por la agencia fue el apropiado; (2) la revisión de las determinaciones de hecho conforme al criterio de evidencia sustancial; y (3) determinar si las conclusiones de derecho fueron correctas mediante su revisión completa y absoluta.[5]

Las decisiones de los organismos y las agencias públicas gozan de una presunción de regularidad y corrección que debe respetarse mientras la parte que las impugne no produzca evidencia suficiente que las derrote.[6] Con ello se pretende "evitar la sustitución del criterio del organismo administrativo en materia especializada por el criterio del tribunal revisor".[7] Es decir, la revisión judicial se limita en determinar si la actuación de la agencia se fundamentó en evidencia sustancial y si no es

---

[4] Asoc. Fcias. v. Caribe Specialty et al. II, 179 D.P.R. 923, 940; Vélez v. A.R.Pe., 167 D.P.R. 684, 693 (2006).

[5] Asoc. Fcias. v. Caribe Specialty et al. II, supra; Pacheco v. Estancias, 160 D.P.R. 409, 431 (2003).

[6] Rivera Concepción v. A.R.Pe., 152 D.P.R. 116, 123 (2000).

[7] P.R.T.C. v. J. Reg. Tel. de P.R., 151 D.P.R. 269, 282(2000).

arbitraria, ilegal, o tan irrazonable que la misma constituya un abuso de discreción.[8]

La evidencia sustancial se refiere a aquella evidencia "relevante que una mente razonable podría aceptar como adecuada para sostener una conclusión".[9] Precisamente, en <u>Domínguez v. Caguas Expressway Motors</u>, 148 D.P.R. 387, 397-398 (1999), reiteramos que

> [p]ara que un tribunal pueda decidir que la evidencia en el expediente administrativo no es sustancial es necesario que la parte afectada demuestre que existe otra prueba en el récord que razonablemente reduzca o menoscabe el peso de tal evidencia, hasta el punto de que un tribunal no pueda, concienzudamente, concluir que la evidencia sea sustancial, en vista de la prueba presentada y hasta el punto que se demuestre claramente que la decisión [del organismo administrativo] no está justificada por una evaluación justa del peso de la prueba que tuvo ante su consideración.

De esta forma, cuando una parte alega haber sido afectada por una determinación de hecho de una agencia tendrá que demostrar que existe otra prueba en el expediente que reduce o menoscaba el valor probatorio de la evidencia impugnada, hasta el punto que no pueda concluirse que la decisión administrativa fue razonable a la luz de toda la evidencia que tuvo ante su consideración.[10] Por el contrario, si dicha parte no demuestra la existencia de esa

---

[8] <u>Otero v. Toyota</u>, 163 D.P.R. 716, 729 (2005).

[9] <u>Rebollo v. Yiyi Motors</u>, 161 D.P.R. 69, 76-77 (2004).

[10] <u>O.E.G. v. Rodríguez</u>, 159 D.P.R. 98, 118 (2003).

otra prueba, el tribunal revisor deberá confirmar las determinaciones de hecho realizadas por la agencia.[11]

Ahora bien, esa deferencia judicial presente en la revisión de determinaciones administrativas no implica una renuncia de los tribunales a nuestra función revisora. Más bien, sólo es una limitación de dicha función.[12] No obstante, es importante señalar que la deferencia judicial no es un impedimento para la revisión de aquellos casos en los que la interpretación de la agencia menoscaba derechos fundamentales, es irrazonable o conduzca a la comisión de injusticias.[13]

### III

En el presente caso, el Tribunal de Apelaciones revocó una conclusión de la Junta de Personal de la Rama Judicial. Determinó que ésta no hallaba sustento en la prueba que obraba en la totalidad del expediente. Sin embargo, al examinar el expediente surge que la determinación administrativa se sustentó en la prueba documental y testifical. El Tribunal de Apelaciones no tuvo el beneficio de examinar la transcripción del proceso administrativo ya que ésta no fue incluida en el recurso de revisión judicial sometido a su consideración. Por ende, el Tribunal de Apelaciones no pudo evaluar los testimonios brindados en el proceso. Contrario a lo anterior, la Junta

---

[11] Íd.

[12] Rivera Concepción v. A.R.Pe., *supra.*

[13] Costa, Piovanetti v. Caguas Expressway, 149 D.P.R. 881, 889 (1999).

sí tuvo la oportunidad de evaluar los testimonios de las empleadas involucradas en la controversia.

Como ya hemos visto, el estándar de revisión judicial de las decisiones administrativas es exigente y no se justifica la intervención de un tribunal con éstas, a menos que la parte que solicita la revisión lo ponga en posición de concluir que éstas son arbitrarias y caprichosas. De esa forma, consideramos que en el presente caso, el Tribunal de Apelaciones revocó una determinación de hecho sin estar en posición de hacerlo. Dicho foro no tuvo el beneficio de examinar la transcripción de la prueba oral desfilada durante el proceso administrativo. Por lo tanto, debía brindarle deferencia a la decisión administrativa.

Específicamente, el foro apelativo intermedio concluyó que aun cuando se probara que la señora Camacho había mentido en relación con el contenido del sobre donde supuestamente había recibido el informe en controversia, ello no necesariamente implicaba que fue la señora García Fantauzzi quien le hizo llegar el documento a la testigo. No obstante, a base de la prueba presentada la Junta determinó que la señora García Fantauzzi —al tener copia del informe de la señora Camacho en su computadora- fue quien le proveyó una copia a esta última. Ahora bien, aun cuando concurriésemos con la conclusión del Tribunal de Apelaciones, ello no es suficiente para revocar la determinación administrativa. Veamos.

Según se desprende del expediente, las sanciones impuestas a la señora García Fantauzzi se basaron sobre tres incidentes que pusieron en entredicho su desempeño profesional. Lo anterior se desprende de todas las notificaciones enviadas por la OAT a la señora García Fantauzzi que indicaban el inicio del proceso administrativo y las sanciones impuestas. Igualmente, así surge de las determinaciones de hecho y las conclusiones de derecho de la Junta de Personal. Por lo tanto, si no se hubiese probado uno de los incidentes que dieron lugar al procedimiento disciplinario seguido contra la señora García Fantauzzi, las sanciones que le fueron impuestas son procedentes en derecho pues encontraban fundamento en los demás incidentes probados (aquellos relacionados con el Centro Judicial de Aguadilla).

La decisión administrativa claramente se fundamentó en los tres incidentes investigados. Dicha decisión se basó, además, por ésta no seguir las directrices de sus superiores y por violar patentemente la confidencialidad de varios empleados en los tres incidentes. Por consiguiente, consideramos que la decisión administrativa —consistente en la suspensión de la señora García Fantauzzi de empleo y sueldo por 5 días y su movilidad a otro puesto sin menoscabo del sueldo— no es irrazonable ni un abuso de discreción. No se justifica, por tanto, que el Tribunal de

Apelaciones haya revocado la determinación de la Junta de Personal de la Rama Judicial en su totalidad.[14]

**IV**

Así, pues, por considerar que la determinación de la Junta de Personal de la Rama Judicial no fue arbitraria, sino hecha dentro del ejercicio de su discreción, revocamos la Sentencia del Tribunal de Apelaciones.

Así lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo, Interina. La Jueza Asociada señora Pabón Charneco emitió Opinión disidente a la cual se unen los Jueces Asociados señores Rivera García y Feliberti Cintrón. El Juez Presidente señor Hernández Denton y el Juez Asociado señor Martínez Torres están inhibidos.


                              Larissa Ortiz  Modestti
                    Secretaria del Tribunal Supremo, Interina

---

[14] El Tribunal de Apelaciones sostuvo que el incidente con la señora Camacho era el que más peso tuvo en la determinación administrativa.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Carmen García Fantauzzi

    Recurrida

        v.

Directora Administrativa de los
Tribunales

    Peticionaria

*Certiorari*

CC-2007-280

Opinión disidente emitida por la Jueza Asociada señora Pabón Charneco a la que se le une el Juez Asociado señor Rivera García y el Juez Asociado señor Feliberti Cintrón.

En San Juan, Puerto Rico, a 8 de agosto de 2011.

    Disiento de la Sentencia dictada por el Tribunal por entender que la decisión de la Junta de Personal de la Rama Judicial - que confirma la determinación disciplinaria de la Directora Administrativa de la Oficina de Administración de Tribunales, en adelante O.A.T., ante un incidente de divulgación de información confidencial - se basó en una mera conjetura.

    Por el contrario, confirmaría la Sentencia del Tribunal de Apelaciones que revocó la determinación de la Junta y la decisión de la Directora Administrativa de la O.A.T.

I

La Sra. Carmen García Fantauzzi, en adelante la recurrida o señora García Fantauzzi, trabajaba como coordinadora en el Programa de Ayuda al Empleado, en adelante PAE, de la Oficina de Administración de los Tribunales.

El 5 de diciembre de 2002, la recurrida recibió una notificación de la O.A.T. informándole que era objeto de una investigación por haber divulgado información confidencial durante el mes de diciembre. Mediante dicha notificación fue suspendida de empleo y se le prohibió la entrada al edificio de la O.A.T. hasta la celebración de la vista informal el 18 de diciembre de 2002.

Los hechos bajo investigación se desarrollaron entre abril y diciembre de 2002. En abril de 2002 la Supervisora de la recurrida la asignó a brindar sus servicios a tres (3) empleadas que tenían problemas de relaciones interpersonales. De las tres (3) empleadas la recurrida atendió solamente a la Sra. Mildred Camacho. Posteriormente, la recurrida -redactó un Informe sobre el caso encomendado y lo remitió a su Supervisora. La señora Camacho solicitó copia del informe a la Supervisora de la recurrida, pero al revisar su contenido y discutirlo con la

señora García Fantauzzi, la Supervisora optó por retener el informe original e indicarle a la participante que no existía el documento.

Entonces, la señora Camacho recurrió ante la Directora de Recursos Humanos de la O.A.T., en adelante la Directora, solicitando el documento. Al hacerlo, expresó que la recurrida le había informado sobre la existencia del informe pero que su Supervisora era quien debía dárselo o, en la alternativa, autorizarla a suministrárselo. La Directora se reunió entonces con la recurrida y su Supervisora, entre otras personas, y al conocer que el documento involucraba a otros empleados, lo removió del expediente y lo puso bajo llave en un archivo de su oficina. A su vez, dio instrucciones de que no se podía dar copia de éste a la participante.

Nuevamente la señora Camacho solicitó el informe pero esta vez mediante representante legal. La Directora le indicó a éste que cualquier documento generado por el PAE era confidencial y no se consideraría para tomar decisiones respecto al empleado. De igual forma, la Directora le notificó a la señora Camacho sobre dicha carta y le envió copia mediante el servicio postal el 22 de noviembre de 2002.

No obstante, en diciembre de 2002 la señora Camacho se comunicó con la Oficina de Recursos Humanos y les agradeció "de forma cínica" el que le enviaran también el informe en el sobre.[15] Asimismo, le enseñó a su supervisora y a otra empleada el documento. Sin embargo, la secretaria y la Directora expresaron que no lo habían enviado, lo que dio inicio a la investigación disciplinaria contra la recurrida por posible divulgación confidencial.

El 18 de diciembre se le notificó a la recurrida que la vista señalada fue transferida para el 8 de enero de 2003 dado que la investigación había sido ampliada para incluir otros hechos ocurridos para el mes de mayo de 2001. Estos hechos también estaban relacionados con la divulgación de información confidencial.[16]

Culminada la investigación, el 20 de mayo de 2003 la recurrida fue suspendida de empleo y sueldo por cinco días por haber notificado sin la debida autorización información confidencial contenida en tres informes preparados y suscritos por ella entre 2001 y 2002. Se concluyó que sus actuaciones violaron la Regla 24 de las Reglas de

---

[15] Apéndice de la Petición de *certiorari*, pág. 33.

[16] Cabe señalar que de las determinaciones de hecho de la Junta surge que la recurrida tenía autorización de su supervisora para redactar uno de los dos informes redactados en el 2001. No obstante, el remitente o medio utilizado no fue el correcto, pues en vez de enviarla al empleado, la envió a la Directora del Centro Judicial donde se desempeñaba éste a pesar de incluir información médica personal.

Administración del Sistema de Personal de la Rama Judicial, 4 L.P.R.A. Ap. XII; el Art. 16.1 del Reglamento de la Administración del Sistema de Personal de la Rama Judicial, 4 L.P.R.A. Ap. XIII, y la Regla 9 del Código de Ética para Funcionarios, Empleados, Ex funcionarios y Ex empleados de la Rama Judicial. Además, como parte de los resultados de la investigación fue transferida a ocupar un puesto como Oficial Administrativo II en el área de administración de documentos. Cabe señalar que de forma muy oportuna, el puesto que la recurrida ocupaba se eliminó tras su suspensión y a su vez, se creó uno nuevo. El nuevo puesto de Especialista en ayuda al Empleado pasó a ser uno de confianza y requiere, además, una maestría en psicología o trabajo social.[17]

Así las cosas, la señora García Fantauzzi recurrió ante la Junta de Personal de la Rama Judicial, en adelante la Junta. La vista en su fondo se celebró los días 2, 3 y 4 de mayo de 2005. No obstante, el 11 de mayo de 2005 la Examinadora de la Junta ordenó a las partes a expresarse sobre una discrepancia entre la cancelación de los sellos del sobre enviado a la señora Camacho (.37¢) y el franqueo necesario que resulta del metro postal ubicado en la Secretaría de la Junta al pesar la cantidad de hojas que la

---

[17] Apéndice de la Petición de *certiorari*, pág. 13.

testigo alegó que le fueron enviadas en el sobre (.60¢).[18]

Por un lado, la O.A.T. estipuló los resultados del pesaje realizado por la Examinadora, mientras que la recurrida se opuso al uso de medios externos para cuestionar la credibilidad de un testigo, en ausencia de los abogados y luego de completado el proceso de presentación de evidencia. Apéndice de *certiorari*, págs. 46-49.

Finalmente, la Junta confirmó la determinación de la Directora Administrativa de los Tribunales. Concluyó que la señora García Fantauzzi no había cumplido con las directrices que le fueran dadas al brindarle a tres empleados de la Rama Judicial copia de informes preparados por ella. Apéndice de *certiorari*, pág. 36. En sus determinaciones de hecho especifica que:

> Ante esta Junta, la Sra. Camacho como testigo de la parte apelante presentó en evidencia el sobre original y la carta original que le envió la Directora de Recursos Humanos y testificó que ambos documentos, la carta de la Directora de Recursos Humanos con la copia de la carta enviada al Lcdo. González y el Informe preparado por la apelante, le llegaron mediante el servicio postal en el sobre original que se sometió en evidencia. **Quedó demostrado que la Sra. Camacho mintió** ya que el sobre canceló $ .37 y la examinadora pesó el sobre con las cartas en el metro postal de la Secretaría de la Junta y ello evidenció que se supone que si dichos documentos se hubiesen incluido en el sobre, éste hubiese cancelado $ .60.

---

[18] Apéndice de *certiorari*, pág. 50.

El informe preparado por la apelante García Fantauzzi no fue enviado a la Sra. Camacho por error de la Directora de Recursos Humanos y tampoco fue enviado por el Programa de Ayuda al Empleado. **Dicho informe fue enviado a la Sra. Camacho por la apelante García Fantauzzi que tenía grabado dicho informe en su computadora.** Apéndice de la Petición de *certiorari*, pág. 33 (Énfasis nuestro).

Posteriormente, en las conclusiones de derecho señala que:

… En el caso de Mildred Camacho se le había dado una instrucción específica a la apelante tanto para la Sra. Haydée Enríquez como por la Directora de Recursos Humanos de la Oficina de Administración de los Tribunales que el informe sobre la Sra. Camacho no se le iba a entregar a ella y tampoco se iba a incluir en el expediente que existía en el Programa al Empleado sobre la Sra. Camacho, sin embargo, la apelante no cumplió con dicha instrucción y le entregó dicho informe a la Sra. Camacho.

…

… En la apelación que nos ocupa, el informe de la Sra. Camacho fue clasificado como confidencial con instrucciones específicas sobre su manejo. La apelante, en violación a las instrucciones impartidas, le entregó dicho informe a la Sra. Camacho. Apéndice de la Petición de *certiorari*, págs. 36-38

Inconforme, la señora García Fantauzzi recurrió de la determinación de la Junta ante el Tribunal de Apelaciones. Dicho foro correctamente revocó la resolución recurrida y la decisión de la Directora Administrativa de la O.A.T. Además, dejó sin efecto la orden de traslado de la señora García Fantauzzi. Esto, pues, la decisión de la Junta de que la recurrida había suministrado información confidencial a la señora Camacho se basó principalmente en

el pesaje del sobre enviado. Concluyó que tal determinación no se sustentó en evidencia sustancial, sino que la evidencia resultó ser altamente imprecisa y especulativa.[19] A su entender no se logró establecer como inferencia razonable el que la recurrida le entregara el informe a la señora Camacho. A esos efectos, expresó lo siguiente:

> La decisión de la Junta de confirmar la decisión de la Directora Administrativa de la O.A.T. se basó, principalmente, en el hecho del pesaje del sobre enviado por la Sra. Colón a la Sra. Camacho. Si bien es cierto que para llegar a la conclusión que hoy revisamos la Junta tomó en consideración situaciones anteriores en las que, alegadamente, la recurrente había suministrado información confidencial a los empleados, -como, por ejemplo, la ocurrida en el Centro Judicial de Aguadilla- la realidad es que la que tuvo mayor peso fue lo relacionado con el informe de la Sra. Camacho por tratarse de un documento "clasificado como confidencial con instrucciones específicas sobre su manejo". Pág. 15, resolución recurrida.

> ...

> La Junta, una vez descartó a la Sra. Colón como la posible remitente del informe a la Sra. Camacho concluyó, por eliminación, que fue la recurrente quien lo hizo. Esto se aparta de lo que constituye evidencia sustancial apoyada en el récord administrativo.

> Al revisar la desfilada en el caso de autos, de por sí sola, no demuestra de forma convincente que haya sido la recurrente quien le envió el referido informe a la Sra. Camacho. Resolver lo contrario constituye, a todas luces, una especulación. Consiguientemente, una decisión

---

[19] Apéndice de *certiorari*, pág. 132.

arbitraria y caprichosa que nos vemos impedidos de sostener. Apéndice de la Petición de *certiorari*, págs. 10 y 12.

Así las cosas y tras una moción de reconsideración que fue declarada no ha lugar, la O.A.T. recurre ante nos.

II

La Junta de Personal de la Rama Judicial tiene facultad para investigar y revisar las determinaciones tomadas por la autoridad nominadora que afecten a empleados, funcionarios o personas particulares. Al hacerlo, puede confirmar, revocar o modificar tales determinaciones. Art. VI del Reglamento de la Junta, 4 L.P.R.A. Ap. XIV. Para cumplir con estas facultades puede, *inter alia*, citar testigos, celebrar vistas, aplicar los mecanismos de descubrimiento de prueba y las disposiciones de las Reglas de Evidencia, así como realizar determinaciones de hechos y conclusiones de derecho. *Báez v. Dir. Adm. Trib.*, 150 D.P.R. 351, 354 y 356 (2000). Véase, *Rivera v. Dir. Adm. Trib.*, 144 D.P.R. 808, 817 (1998). A su vez, las determinaciones de la Junta son revisables por los tribunales y se rigen por un procedimiento similar al de la revisión judicial de decisiones administrativas. *Rivera v. Dir. Adm. Trib.*, supra, pág. 822. Por ello, repasemos el derecho aplicable a la revisión de este tipo de determinaciones.

Como norma general los tribunales le confieren gran peso y deferencia a las determinaciones de hecho, así como a las interpretaciones del derecho emitidas por la agencia administrativa encargada de poner en vigor una ley. *Costa, Piovanetti v. Caguas Expressway*, 149 D.P.R. 881, 889 (1999). Esto en virtud del conocimiento especializado y la pericia atribuidas a la agencia. *Misión Ind. P.R. v. J.P.*, 146 D.P.R. 64, 130 (1998). A esto se le suma la presunción de legalidad y corrección que recae sobre las decisiones administrativas. Íd. Sin embargo, bajo el manto de la deferencia no podemos avalar situaciones en que la interpretación de la agencia pueda afectar derechos fundamentales, resulte incompatible con el propósito del estatuto interpretado, sea irrazonable, o conduzca a la comisión de injusticias. *Padín Medina v. Adm. Sist. Retiro,* 171 D.P.R. 950, 962 (2007); *Costa, Piovanetti v. Caguas Expressway*, supra.

Por lo tanto, son tres los aspectos comprendidos en la revisión judicial: las determinaciones de hecho, las conclusiones de derecho y la concesión del remedio apropiado por el organismo administrativo. *Padín Medina v. Adm. Sist. Retiro,* supra, pág. 960; *Misión Ind. P.R. v. J.P.,* supra, pág. 129. A su vez, la revisión se hará bajo

el criterio de razonabilidad. *Misión Ind. P.R. v. J.P.*, supra, pág. 134.

Particularmente sobre las determinaciones de hecho, hemos señalado que la deferencia cede cuando la decisión administrativa no está sostenida por evidencia sustancial en vista de la totalidad de la prueba que obre en el expediente administrativo, pues la apreciación arbitraria de la prueba por la agencia, así como el que las determinaciones de hecho están sostenidas por evidencia sustancial constituyen una cuestión de derecho. *Padín Medina v. Adm. Sist. Retiro,* supra, pág. 962; *Costa, Piovanetti v. Caguas Expressway*, supra; *Misión Ind. P.R. v. J.P.,* supra, pág. 131. Es decir, la decisión administrativa debe sostenerse en "aquella evidencia relevante que una mente razonable podría aceptar como adecuada para sostener una conclusión". *Hilton Hotels v. Junta de Salario Mínimo,* 74 D.P.R. 670, 687 (1953).

Además, para poder cumplir con nuestro deber de revisión:

> … las determinaciones de hecho de las agencias administrativas deben ser lo suficientemente definidas. De este modo se cumple el propósito de poner a los tribunales en posición de revisar de forma inteligente la decisión del organismo administrativo y determinar si los hechos probados por la agencia ofrecen una base razonable para su evaluación. Por tanto, la decisión de la agencia debe exponer los hechos determinados como probados, que incluyen las

inferencias, que en última instancia creyó justificadas. *Padín Medina v. Adm. Sist. Retiro,* supra, pág. 961. Véase, *Misión Ind. P.R. v. J.P.,* 146 D.P.R. 64 (1998). Véase, además: D. Fernández Quiñones, *Derecho administrativo y Ley de Procedimiento Administrativo Uniforme*, Colombia, Ed. Forum, 1993, pág. 538.

## III

En el caso de autos, no cabe duda de que las determinaciones de hecho de la Junta nos ponen en posición de revisar su decisión de forma inteligente.

La Junta señala que no le dio credibilidad al testimonio de la señora Camacho particularmente con relación a la forma en que alega tuvo acceso al informe. Por otro lado, sí le mereció credibilidad el que los demás testigos expresaran que no le habían entregado el informe a la señora Camacho. Tales determinaciones de la Junta con relación a la credibilidad de los testigos nos merecen el mayor respeto, pues no pretendemos menoscabar el peso que le dio a tal evidencia. Sin embargo, nuestra reserva no es con la prueba ante su consideración ni la credibilidad que le mereciera, sino con la inferencia que entendió justificada y razonable.

La Junta está sujeta a seguir, hasta donde sea posible, las disposiciones de las Reglas de Evidencia. Art. XIII del Reglamento de la Junta, 4 L.P.R.A. Ap. XIV. Ciertamente, las Reglas de Evidencia autorizan al uso de

evidencia indirecta o circunstancial, es decir, de "aquella que tiende a demostrar el hecho en controversia probando otro distinto, del cual, en unión a otros hechos ya establecidos, puede razonablemente inferirse el hecho en controversia". Regla 10(H) de las Reglas de Evidencia de 1979, 32 L.P.R.A. Ap. IV. Tal evidencia es intrínsecamente idéntica a la evidencia directa. *Ferrer v. González,* 162 D.P.R. 172 (2004). Sin embargo, "puede en algunos casos conducir a un resultado enteramente incorrecto." *Pueblo v. Bonilla,* 78 D.P.R. 152, 160 (1955) citando a *Holland v. United States,* 348 U.S. 121 (1954). Este caso es uno de ellos.

La Junta infirió que la recurrida fue quien le facilitó el documento a la señora Camacho tras considerar que la señora Camacho mintió sobre la forma en que tuvo acceso al informe ante la falta de franqueo; que la recurrida había remitido previamente dos informes a empleados que había atendido (uno de ellos autorizado por su Supervisora), y por merecerle credibilidad que los demás empleados entrevistados no enviaron el documento por error. Es tras esta inferencia que concluye que la recurrida violó las disposiciones señaladas. Empero, a nuestro entender de la unión de estos hechos no procede tal inferencia. La determinación de la Junta no pasa de ser una mera conjetura

de la que no se puede razonablemente inferir que la recurrida fue quien entregó el informe a la señora Camacho. Por el contrario, llevó a cabo un proceso de eliminación que culminó con un resultado irrazonable e injusto, tal y como correctamente determinó el Tribunal de Apelaciones.

IV

Por los argumentos antes expresados, disiento respetuosamente de la Sentencia emitida por el Tribunal y confirmaría la determinación del Tribunal de Apelaciones.


                              Mildred G. Pabón Charneco
                                   Jueza Asociada