Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL X

| DOMINGO OLMEDA ALBINO<br><br>Recurrido<br><br>v.<br><br>TU BELLAKASA INVESTMENT, LLC<br><br>Recurrente | TA2026RA00012 | *Revisión Administrativa* Procedente del Departamento de Asuntos del Consumidor (DACo)<br><br>Caso Núm. CAG-2025-0006794<br><br>Sobre: Bienes Raíces (Ley Núm. 10 de 26 de abril de 1994, según enmendada) |
|---|---|---|

Panel integrado por su presidenta la jueza Grana Martínez, el juez Ronda del Toro, la jueza Lotti Rodríguez

*Grana Martínez, jueza ponente*

**SENTENCIA**

En San Juan, Puerto Rico, a 27 de marzo de 2026.

Tu Bellakasa Investment, LLC (en adelante, parte recurrente), mediante recurso de *Revisión Judicial* presentado el 9 de enero de 2026, nos solicita que dejemos sin efecto la *Resolución* emitida por el Departamento de Asuntos del Consumidor (DACo), Oficina de Caguas, el 7 de noviembre de 2025, notificada el 10 de noviembre de 2025. Mediante el referido dictamen, el DACo concluyó, entre otras cosas, que la parte recurrente realizó funciones de *Realtor* sin estar autorizado por ley.

Por los fundamentos que proceden a continuación, se confirma la *Resolución* recurrida.

**I.**

El 13 de marzo de 2025, el señor Domingo Olmeda Albino (en adelante, parte recurrida) presentó una *Querella* ante el DACo, la cual se limitó, exclusivamente, al incumplimiento de ciertas mejoras pendientes en la propiedad adquirida a través del Programa de

Asistencia "R3".[1] Ante ello, el 9 de septiembre de 2025, el DACo celebró una vista administrativa.

El 7 de noviembre de 2025, el DACo emitió una *Resolución* en la cual resolvió, entre otras cosas, que "el Presidente de la Querellada realizó funciones de *Realtor* sin estar autorizado en ley, lo que representa una violación al Artículo 36 de la Ley Núm. 10 de 26 de abril de 1994, según enmendada".[2] Además, luego del DACo analizar los testimonios de las partes, la evidencia sometida en la vista administrativa y los documentos que obran en el expediente, emitió las siguientes determinaciones de hechos:

## DETERMINACIONES DE HECHOS

1. La Querellada es una corporación registrada en el Departamento de Estado de Puerto Rico, con número de registro 416863, la cual tiene un estatus de activa, y es efectiva desde el 9 de octubre de 2018. Su Agente Residente es el Sr. Fernando William Harris.

2. El Sr. Fernando William Harris (en lo sucesivo el Presidente) no es un corredor de bienes raíces autorizado por ley para ejercer esa profesión en Puerto Rico.

3. El Querellante estaba interesado en comprar una vivienda y verificando en Clasificados Online encontró un anuncio de la Querellada en donde se promocionaba la venta de una residencia localizada en la Urbanización Massó Calle 9E 21 en el pueblo de San Lorenzo, Puerto Rico (en lo sucesivo la Residencia).

4. El Querellante llamó al número que aparecía en el Clasificado online siendo atendido por el Presidente.

5. El 31 de julio de 2024 el Querellante firmó un Contrato de Opción a Compra Venta para la Residencia antes indicada. El Presidente le solicitó al Querellante la cantidad de $9,500.00 como depósito. Ese día el Querellante le entregó al Presidente un cheque por la cantidad de $5,500.00 como depósito de la Opción a Compra y varias semanas después el Querellante le entregó otro cheque al Presidente por la cantidad de $4,000,00. [Exhibit I Estipulado por las partes Contrato de Opción de Compraventa suscrito por el Querellante el 31 de julio de 2024; Exhibit II Estipulado copia de Factura de depósito por la cantidad de $5,500.00 con fecha 31 de julio de 2024].

6. A pesar de que el Querellante le pagó la cantidad de $5,500.00 al Presidente mediante un cheque de gerente, el día que suscribió el Contrato de Opción a Compra en dicho contrato en la cláusula PRIMERO se indicó que en ese acto se entregó la cantidad de $0.00.

7. Para la compra de la Residencia el Querellante recibió una ayuda económica del Departamento de la Vivienda de Puerto

---

[1] Entrada #1 del Sistema Unificado de Manejo y Administración de Casos del Tribunal de Primera Instancia (SUMAC TPI).
[2] Entrada #2 de SUMAC TPI, pág. 8.

Rico bajo el Programa conocido como R3. [El Programa R3 fue un programa financiado con fondos de recuperación de desastre (CDBG.DR) para ayudar a las personas afectadas por los huracanes Irma y María].

8. Como parte de los requisitos del Programa y antes de desembolsar los fondos, para el pago de la Residencia, el Departamento de la Vivienda asignó a un Inspector de nombre Raúl E. Rodríguez Santiago (en lo sucesivo el Inspector) para realizar una Inspección de la Residencia. El 28 de agosto de 2024, el Inspector realizó la inspección de la Residencia opcionada por el Querellante. Cuando el Inspector inspeccionó la Residencia, la misma constaba con una nevera, la cual al momento de la compraventa no estaba disponible. El Presidente le indicó al Querellante que le supliría una nevera al Querellante y no lo hizo. [Exhibit III Estipulado Inspección de la residencia que había opcionado el Querellante, realizada por el Sr. Raúl E. Rodríguez]. El Querellante no sometió ante este Departamento ninguna cotización ni valorización de la nevera ofrecida por el Presidente, por tal razón, este Departamento la valoriza en $300.00 tomando en consideración las fotos de la inspección y por tratarse de una nevera usada.

9. Como parte del contrato de Opción a Compra suscrito por Querellante en la cláusula número 4 del Contrato de Opción se describieron unos trabajos a realizar los cuales la Querellada aceptó que fue la entidad que se comprometió a realizar dichos trabajos que consistían en lo siguiente:

> CUARTO: La parte compradora (es) acepta esta opción y la propiedad. Acepta todos sus derechos, usos y servidumbres, que surjan del Registro de la Propiedad. El baño del cuarto Master y el baño de la marquesina se le instalarán losas, se cambiará la puerta de uno de los cuartos y el baño principal, se empañetará las áreas del techo que sean necesarias y se sellará el techo de la propiedad.

10. Al momento de suscribir el Contrato de Opción, el Querellante, ni el Presidente seleccionaron el tipo de losa, tamaño y color que se instalaría en los baños. Tampoco indicaron que tipo de material utilizarían para la impermeabilización del techo de la Residencia, ni la garantía de dicho trabajo. Tampoco identificaron las áreas de la Residencia en las cuales era necesario realizar reparaciones en el empañetado.

11. El Querellante y el Presidente no pactaron que el Querellante fuera quien seleccionara las compañías que realizarían los trabajos en la Residencia y fuera la Querellada quien le pagaría a las compañías seleccionadas.

12. El Presidente se comprometió en pagarle al Querellante la reparación del portón eléctrico de la Residencia cuyo costo ascendió a la cantidad de $75.00.

13. El 26 de diciembre de 2024 se realizó el Cierre de la compraventa de la residencia y el Querellante se mudó a vivir a dicha Residencia en enero de 2025.

14. En enero de 2025, el Presidente envió a unos empleados quienes realizaron trabajos de demolición en los baños. El Querellante le solicitó al Presidente que no continuara con los trabajos en lo que realizaba unos trabajos de plomería en la Residencia. Luego de finalizados los trabajos de plomería el querellante llamó al Presidente y éste le indicó que sus empleados estaban realizando trabajos en otro lugar y no podían ir a su Residencia a continuar con los trabajos.

15. El 14 de marzo de 2025, el Querellante radicó ante este Departamento la Querella de epígrafe en la misma señaló, en síntesis, que el Sr. William Harris se comprometió a realizar los siguientes trabajos en su residencia:

- Instalar las losas de los baños cuarto master y marquesina.
- Cambiar puerta del baño principal y uno de los cuartos.
- Sellar techo de la propiedad.
- Proveer una nevera según contrato de inspección.
- Deponer de los escombros.
- Costear la reparación del portón eléctrico $75.00.
- Reparar el techo completo del cuarto master.

16. En la Querella, el Querellante solicitó como remedio que los trabajos a realizarse en su residencia sean por compañías registradas en DACO y que sea el Querellante quien contrate las compañías y que la Querellada pague el costo de dichos trabajos.

17. Con fecha del 17 de marzo de 2025 el [Presidente] le envió una carta al Querellante mediante la cual le indicaba las razones de sus retrasos y que estaba en posición [de] realizar los trabajos en la residencia del Querellante.[3]

En desacuerdo, el 10 de noviembre de 2025, la parte recurrente presentó una *Moción de Reconsideración,* mediante la cual solicitó la eliminación de dicho señalamiento de corretaje, dado a que, el señor Williams únicamente coordinó las mejoras a la propiedad, sin haber intervenido en la transacción de compraventa ni haber recibido comisión alguna.[4] A su vez, acompañó en evidencia el Contrato de Opción de Compra Venta, el **cual en la cabecera de la primera página lee: "TUBELLAKASA.COM ONE DIVISION OF INTERNATIONAL REAL ESTATE".[5]**

El 11 de diciembre de 2025, el DACo emitió una *Resolución* en el cual declaró "No Ha Lugar" la *Moción de Reconsideración.*[6]

Inconforme con el proceder del DACo, el 9 de enero de 2026, la parte recurrente acudió ante este Tribunal mediante recurso de *Revisión Judicial* y señala los siguientes errores:

Erró el Departamento de Asuntos del Consumidor (DACO) al concluir, por primera vez en su Resolución del 7 de noviembre de 2025, que el Sr. Fernando Williams (o William Harris) y/o Tubellakasa Investment LLC ejercieron funciones de corredor de bienes raíces sin licencia, sin que dicha imputación surgiera de la querella original, ni fuera discutida

---

[3] Entrada #2 de SUMAC TPI
[4] Entrada #3 and SUMAC TPI.
[5] Íd., Anejo 1 "Contrato".
[6] Entrada #4 and SUMAC TPI.

durante la vista administrativa, y sin que existiera prueba alguna en el expediente que sustentara tal hallazgo.

Erró el DACO al adjudicar un asunto no controvertido ni notificado, fuera del marco legal y fáctico de la querella presentada, al incorporar un señalamiento de corretaje en su dictamen, cuando la querella se limitó a alegaciones relacionadas con mejoras físicas a una propiedad adquirida mediante el Programa R3. Esta actuación constituye una desviación ultra vires de la autoridad adjudicativa del foro administrativo.

Erró el DACO al emitir una resolución basada en hechos no probados y sin evidencia sustancial en el expediente administrativo, infringiendo el principio fundamental de que toda determinación administrativa debe fundarse exclusivamente en el récord de la vista y la prueba presentada.

Transcurrido el término concedido para presentar alegato en oposición, la parte recurrida no compareció.

## II.

### A. Revisión Judicial

La Sección 4.5 de la Ley Núm. 38 de 30 de junio de 2017, mejor conocida como *Ley de Procedimiento Administrativo Uniforme de Puerto Rico* (LPAU), establece el alcance de la revisión judicial de una decisión administrativa, la cual se circunscribe a lo siguiente:

> El tribunal podrá conceder el remedio apropiado si determina que el recurrente tiene derecho a un remedio.
>
> **Las determinaciones de hechos de las decisiones de las agencias serán sostenidas por el tribunal, si se basan en evidencia sustancial que obra en el expediente administrativo.**
>
> Las conclusiones de derecho serán revisables en todos sus aspectos por el tribunal. 3 LPRA sec. 9675. (Énfasis nuestro).

Los tribunales tienen el deber de no descartar de forma absoluta la determinación de una agencia, sin antes examinar la totalidad del expediente y determinar si la interpretación de la agencia representó un ejercicio razonable de su discreción administrativa. *Voilí Voilá Corp. et al. v. Mun. Guaynabo,* 213 DPR 743, 754 (2024). Asimismo, el tribunal revisor no debe intervenir o alterar las determinaciones de hechos de una agencia si las mismas están sostenidas por evidencia sustancial que surja del expediente administrativo considerado en su totalidad. *Otero v. Toyota,* 163

DPR 716, 728-729 (2005); *Misión Ind. P.R. v. J.P.*, 146 DPR 64, 131 (1998); *Hilton Hotels v. Junta Salario Mínimo*, 74 DPR 670, 687 (1953). Siendo ello así, la parte que impugne las determinaciones del foro administrativo tiene que convencer al tribunal de que la evidencia en la cual se apoyó la agencia para formular tales determinaciones no es sustancial. *Misión Ind. P.R v. J.P.*, *supra,* pág. 131; *Otero v. Toyota, supra,* pág. 728.

Si la parte promovente no presenta la existencia de esa otra prueba que demuestra que la actuación de la agencia no está basada en evidencia sustancial, el tribunal respetará las determinaciones de hechos y no deberá sustituir el criterio de la agencia por el suyo. *Otero v. Toyota, supra,* pág. 728; *Domínguez v. Caguas Expressway Motors, Inc.*, 148 DPR 387, 398 (1999). Esto, dado a que las determinaciones de hechos de una agencia tienen a su favor una presunción de regularidad y corrección que debe ser respetada mientras la parte que las impugne no produzca evidencia suficiente para derrotarlas. *Otero v. Toyota, supra,* pág. 728; *Henríquez v. Consejo Educación Superior*, 120 DPR 194, 210 (1987).

El Tribunal Supremo de Puerto Rico se expresó en *Graciani Rodríguez v. Garage Isla Verde,* 202 DPR 117, 129-130 (2019), sobre la necesidad de ubicar en tiempo y espacio al foro revisor cuando se impugna la apreciación de la prueba en el contexto de un proceso administrativo. **Conforme a ello, cuando la impugnación de las determinaciones de hechos esté basada en prueba oral y en la credibilidad que le dio la agencia, es imprescindible traer a la consideración de este Tribunal revisor la transcripción de la vista celebrada a una exposición narrativa de la prueba.** *Graciani Rodríguez v. Garaje Isla Verde, supra,* págs. 127-129.

A esos efectos, cuando no se tiene forma de evaluar la evidencia presentada debido a que la parte promovente no elevó una transcripción o una exposición narrativa de tal prueba, este

Tribunal no debe intervenir con la apreciación de la prueba oral hecha por la agencia recurrida. J.A. Echevarría Vargas, *Derecho Administrativo Puertorriqueño*, San Juan, Ed. SITUM, 2017, pág. 325. Esto, ya que el expediente administrativo constituye la base exclusiva para la decisión de la agencia, así como en la revisión judicial, la cual incluye la prueba oral recibida en la vista administrativa. Sec. 3.18 de la LPAU, 3 LPRA sec. 9658; *Graciani Rodríguez v Garaje Isla Verde, supra,* pág. 128; *García Reyes v. Cruz Auto Corp.*, 173 DPR 870, 894 (2008).

Cuando la impugnación de las determinaciones de hechos se base en la prueba oral desfilada, así como en la credibilidad que le mereció a la agencia administrativa, nuestro más alto foro local ha expresado que "[e]s imprescindible que se traiga a la consideración del foro revisor la transcripción de la vista celebrada o una exposición narrativa de la prueba". *Camacho Torres v. AAFET*, 168 DPR 66, 92 (2006). Al respecto, el Tribunal Supremo de Puerto Rico explicó lo siguiente sobre la revisión judicial en ausencia de prueba oral:

> [E]n *García Fantauzzi v. Dir. Adm. Trib.*, 182 DPR 560 (2011) (Sentencia), resolvimos que el Tribunal de Apelaciones erró al revocar una determinación de hecho de la Junta de Personal de la Rama Judicial sin estar en posición de así hacerlo, pues "no tuvo el beneficio de examinar la transcripción de la prueba oral desfilada durante el proceso administrativo" y, "[p]or lo tanto, debía brindarle deferencia a la decisión administrativa". Íd., pág. 569. Véase, además, *Camacho Torres v. AAFET, supra*, pág. 92, donde expresamos que, en ausencia de la prueba oral, "difícilmente se podrá descartar la determinación impugnada". (Énfasis suprimido). Por lo tanto, es tarea de la parte interesada presentar al foro revisor la prueba oral bajo la que se pretende impugnar las determinaciones de una agencia administrativa. *Graciani Rodríguez v. Garaje Isla Verde, supra,* págs. 129-130.

**B. La autoridad del DACo para supervisar el negocio de bienes raíces**

La Ley Núm. 10 del 26 de abril de 1994, según enmendada, 20 LPRA sec. 3025 *et seq.,* mejor conocida como la *Ley para Reglamentar el Negocio de Bienes Raíces y la Profesión de Corredor, Vendedor o Empresa de Bienes Raíces en Puerto Rico,* es la

disposición que regula el mercado de bienes raíces en nuestro país. El objetivo de este estatuto fue agrupar todas las disposiciones legales relativas a ese negocio de bienes y establecer un nuevo y más estricto cuerpo reglamentario para beneficio de los consumidores, vendedores y corredores de bienes raíces. *Amieiro González v. Pinnacle Real Estate,* 173 DPR 363, 372, 374 (2008).

La Asamblea Legislativa confirió autoridad a DACo para regular y atender asuntos específicos en los que hay consumidores involucrados. El Artículo 23(d) de la Ley Núm. 10-1994, 20 LPRA sec. 3046, faculta expresamente al DACo a supervisar el negocio de bienes raíces en Puerto Rico, el cual le confiere el poder de considerar y adjudicar las querellas radicadas por los consumidores. En lo pertinente a la controversia que nos ocupa, el Artículo 36 de la Ley Núm. 10-1994, 20 LPRA sec. 3059, dispone lo siguiente sobre la prohibición de ejercer como *Realtor* sin estar autorizado:

> Cualquier persona o entidad que directa o indirectamente para otra persona, con la intención o con la promesa de recibir cualquier compensación. ofrezca, intente o acuerde llevar a cabo una transacción de Bienes Raíces, según se define en esta Ley, ya sea parte de una transacción de Bienes Raíces o la transacción completa en sí, será considerado como un Corredor, Vendedor o Empresa al amparo de dicha definición.
>
> La comisión de un sólo acto por parte de una persona a quien se le requiere una licencia, sin ésta tenerla, constituirá una violación a esta Ley, disponiéndose, además, que cada acto constituirá un delito por separado.

### III.

En el presente recurso, la parte recurrente argumenta que el DACo incidió al condenarlo por realizar funciones de *Realtor* sin estar autorizado en ley, cuando la *Querella* no contenía alegación alguna relacionada con actividades de corretaje o intermediación inmobiliaria. Además, aduce que, durante la vista administrativa, no se presentó prueba ni se discutió si Tu Bellakasa Investment, LLC o el señor Fernando Williams ejercieron funciones de corredor

de bienes raíces. De modo que, este plantea que tal determinación no fue objeto de alegación, prueba, ni discusión durante el trámite administrativo, y fue introducida por primera vez en la *Resolución*.

Según el derecho reseñado, la presunción de corrección y regularidad que reviste a las determinaciones de hechos por las agencias, deben ser respetadas mientras la parte que las impugne no produzca evidencia suficiente para derrotarlas. *Otero v. Toyota, supra*, pág. 728. Cuando la impugnación de las determinaciones de hechos se base en la prueba oral desfilada, así como en la credibilidad que le mereció a la agencia administrativa, nuestro más alto foro local ha expresado que "[e]s imprescindible que se traiga a la consideración del foro revisor la transcripción de la vista celebrada o una exposición narrativa de la prueba". *Camacho Torres v. AAFET, supra,* pág. 92. Es decir, los tribunales apelativos no deben intervenir con la apreciación de la prueba oral hecha por la agencia recurrida cuando no se tiene forma de evaluar la evidencia presentada debido a que la parte promovente no elevó una transcripción o una exposición narrativa de tal prueba. J.A. Echevarría Vargas, *op. cit.,* pág. 325.

En el caso que nos ocupa, la parte recurrente alega en todos sus señalamientos de error que no se presentó alegación y prueba en el trámite administrativo sobre si se ejerció funciones de corredor de bienes raíces. No obstante, pese a cuestionamiento de la prueba ventilada en el DACo, optó por no presentar transcripción de la vista celebrada. La presentación de esa transcripción era necesaria, porque la parte recurrente objeta lo celebrado en ella, así como las determinaciones de hechos que hizo el DACo. Por tanto, este no nos puso en posición para que podamos ejercer nuestra función revisora, ya que nos imposibilita pasar juicio sobre la credibilidad de los testimonios, la prueba presentada y la evaluación del foro administrativo. El incumplimiento de la parte recurrente con las

reglas del Reglamento del Tribunal de Apelaciones relacionadas a la reproducción de la prueba y de la transcripción, nos obliga a honrar la deferencia que merece la decisión del DACo. Véase, Regla 66 Reglamento del Tribunal de Apelaciones, según enmendado, *In re Aprob Enmdas.,* Reglamento TA, 2025 TSPR 42, 215 DPR ___ (2025). Nótese que el 21 de enero de 2026, advertimos mediante Resolución sobre la consecuencia de no reproducir la prueba oral.[7]

Adviértase que, en nuestro ordenamiento jurídico se permiten las enmiendas tácitas. Estas permiten la introducción de otras alegaciones mediante la prueba que se presente en el juicio o, en este caso, vista administrativa. De manera que, cuando con el consentimiento expreso o implícito de las partes se sometan a juicio cuestiones no suscitadas en las alegaciones, aquéllas se considerarán para todos los efectos como si se hubieran suscitado en las alegaciones. Regla 13.2 de Procedimiento Civil, 32 LPRA Ap. V, R. 13.2.

Así pues, ante la presunción de corrección y regularidad que reviste a las determinaciones de hechos emitidas por las agencias y a la parte recurrente no presentar evidencia suficiente para derrotarlas, lo que corresponde es confirmar la *Resolución* recurrida.

**IV.**

Por los fundamentos antes expuesto, se confirma la *Resolución* recurrida.

Notifíquese.

Lo acordó y manda el Tribunal y lo certifica la secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[7] Entrada #3 de SUMAC TA.