EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| El Pueblo de Puerto Rico<br><br>Recurrido<br><br>v.<br><br>Reynaldo Pérez Delgado<br><br>Peticionario | Certiorari<br><br>2023 TSPR 35<br><br>211 DPR ___ |

Número del Caso: CC-2020-0477

Fecha: 23 de marzo de 2023

Tribunal de Apelaciones:

   Panel VI

Oficina del Procurador General:

   Hon. Fernando Figueroa Santiago
   Procurador General

   Lcdo. Javier O. Sepúlveda Rodríguez
   Subprocurador General

   Lcda. Marie L. Díaz De León
   Procuradora General Auxiliar

   Lcda. Liza M. Delgado González
   Procuradora General Auxiliar


Abogado de la parte peticionaria:

   Lcdo. José A. Rubio Pitre

Materia: Derecho Penal - Naturaleza del delito de *Restricción de comunicaciones* tipificado en el Art. 2 de la Ley Núm. 15-2011, frente al delito de *Posesión e introducción de objetos a un establecimiento penal* estatuido en el Art. 277 del Código Penal de Puerto Rico, enmarcado desde el principio de especialidad.

Este documento está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal Supremo. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| El Pueblo de Puerto Rico<br>Recurrido<br><br>v.<br><br>Reynaldo Pérez Delgado<br>Peticionario | CC-2020-0477 | *Certiorari* |

**El Juez Asociado señor Rivera García emitió la Opinión del Tribunal.**

En San Juan, Puerto Rico, a 23 de marzo de 2023.

A grandes rasgos, la controversia que presenta este caso nos convida a examinar si hubo ausencia total de prueba en un procedimiento de vista preliminar en alzada. Como explicaremos en detalle más adelante, la contestación a este señalamiento **es en la negativa**. Esto, ya que el peticionario no colocó a este Tribunal en posición de ejercer un juicio responsable sobre la prueba que se presentó en el foro primario, **pues no incluyó una transcripción de la prueba oral vertida**. Por ello, es forzoso alcanzar tal conclusión.

No obstante, si bien la médula de este caso gira en torno al argumento de insuficiencia antes aludido, dada la discusión complementaria del peticionario, la realidad es que este caso también nos permite, en primer lugar, analizar la naturaleza del Art. 2 de la Ley Núm. 15-2011, *infra*, *vis a vis* el Art. 277 del Código Penal

de Puerto Rico, *infra*. **Lo anterior, enmarcado desde el principio de especialidad.**

En segundo lugar, nos permite aclarar los contornos del delito de *Restricción de Comunicaciones*, tipificado en el Art. 2 de la Ley Núm. 15-2011, *infra*, **y sus elementos probatorios**.

En aras de exponer los pormenores del caso, veamos el trasfondo procesal atinente.

## I

Por hechos ocurridos el pasado 8 de octubre de 2019, el Ministerio Público presentó una denuncia por infracción al Artículo 277 del Código Penal de 2012, sobre posesión e introducción de objetos a un establecimiento penal, contra el Sr. Reynaldo Pérez Delgado (señor Pérez Delgado o peticionario).[1] En esencia, se le imputó la posesión de un *SIM Card* mientras se encontraba confinado en una institución penal y que tal objeto podía afectar el orden o la seguridad de la penitenciaría.

La vista sobre causa para arresto se celebró el 30 de octubre de 2019 y, luego de examinar la prueba presentada, el Tribunal de Primera Instancia determinó causa probable.[2] Subsiguientemente, se celebró la vista

---

[1] 33 LPRA sec. 5370.
[2] Apéndice de la Petición de *certiorari*, pág. 28.

preliminar, sin embargo, el foro primario determinó que no existía causa probable para acusar.

Insatisfecho, el Ministerio Público solicitó vista preliminar en alzada, la cual se celebró el 12 de diciembre de 2019. En esta ocasión, y luego de aquilatar la prueba, **el tribunal primario encontró causa probable por el delito imputado**. Así, el 17 de diciembre de 2019, el Ministerio Público presentó la correspondiente acusación.

En desacuerdo, el 14 de enero de 2020, el señor Pérez Delgado presentó una *Moción de desestimación*. En síntesis, alegó que no se presentó prueba sobre todos los elementos del delito imputado ni la conexión con su persona, amparado en la Regla 64(p) de Procedimiento Criminal,[3] y que, además, la conducta imputada en la acusación no constituía delito.[4] Como fundamento de su reclamo, el peticionario arguyó que la posesión de un *SIM card* en una institución penitenciaria no estaba comprendida dentro de la prohibición tipificada en el Art. 277 del Código Penal, *supra*. De igual forma, señaló que tal objeto no podía clasificarse como uno que pudiera afectar el orden o la seguridad del centro carcelario y, además, que dicha tarjeta *SIM* no tiene valor ni puede usarse por sí sola. Posteriormente, el

---

[3] Íd.
[4] 34 LPRA Ap. II

Ministerio Público presentó una *Contestación a Moción de Desestimación*.

Evaluados los argumentos de ambas partes, el 4 de febrero de 2020, el Tribunal de Primera Instancia emitió una *Resolución,* notificada el 18 de febrero de 2020, en la que declaró no ha lugar la solicitud de desestimación que presentó el peticionario.[5] A juicio de ese tribunal, la posesión de un *SIM Card* por un confinado dentro de una institución penal "constituye un objeto que puede afectar el orden o la seguridad de la institución penal ya que es capaz de hacer funcionar un teléfono celular, también es capaz de almacenar data, entre otras cosas".[6]

Inconforme, el 10 de junio de 2020, el peticionario recurrió mediante *certiorari* ante el Tribunal de Apelaciones. En su recurso, sostuvo que el Ministerio Público no presentó prueba suficiente en la vista preliminar como para probar la comisión del delito imputado, toda vez que no probó que la tarjeta *SIM* estuviese activada, funcionara o que almacenara data. De igual forma, insistió que la posesión de una tarjeta *SIM* no constituía una violación al Art. 277 del Código Penal, *supra*. Por su parte, el Estado se opuso y esencialmente, <u>sostuvo que el peticionario no acompañó su recurso con la transcripción o la regrabación del proceso</u>, por lo que el foro apelativo no estaba en

---

[5] Apéndice de la Petición de *certiorari*, pág. 43.
[6] Íd, pág. 47.

posición de evaluar la alegada insuficiencia de la prueba. En la alternativa, sostuvo que la prueba que presentó fue suficiente para sostener todos los elementos del delito.

Posteriormente, el 12 de agosto de 2020, el foro apelativo intermedio emitió una *Sentencia* en la que confirmó la determinación del tribunal de instancia.[7] En esta, distinguió que, en la etapa de vista preliminar, basta con que el Estado presente alguna prueba sobre los elementos del delito, porque el estándar de adjudicación opera basado en probabilidades. Además, coincidió con la interpretación del foro primario en cuanto a que la posesión de una tarjeta SIM, si se probase en un juico plenario, podía ser una infracción al Art. 277 del Código Penal, *supra*. Sobre ello, concluyó que el principio de legalidad permite cierto grado de interpretación, máxime, cuando se trataba de un delito de amplia cobertura.[8]

Ulteriormente, el peticionario solicitó la reconsideración de la determinación, no obstante, mediante *Resolución* emitida el 15 de septiembre de 2020, se declaró no ha lugar.

---

[7] Íd., págs. 1-18.
[8] Íd., págs. 14-15.

Así las cosas, el 29 de octubre de 2020, el peticionario recurrió ante nos mediante *Petición de certiorari,* en la que planteó el error siguiente:

> Erró una mayoría del [Tribunal de Apelaciones] al concluir que la mera posesión de un *SIM card*, [p]uede afectar el orden o la seguridad de una institución penal, porque es capaz de hacer funcionar un teléfono celular y almacenar data, por lo que puede constituir una violación al Artículo 277 del Código Penal.

Luego de varios trámites, y en virtud de una reconsideración, el 29 de enero de 2021 expedimos el auto solicitado. Ante ello, las partes presentaron sus respectivos alegatos. El peticionario arguyó que la determinación de causa probable para juicio en su contra fue contraria a derecho. En esencia, planteó que el Ministerio Público no presentó prueba suficiente para sostener tal determinación, toda vez que no probó que el *SIM Card* funcionaba, que tenía data almacenada, que estaba activado o que podía hacer funcionar un teléfono. A juicio del peticionario, como el Estado no probó esas instancias, presuntamente, decidió acusarlo bajo el Art. 277 del Código Penal[9] y no bajo las disposiciones de una ley especial, como lo es el Art. 2 de la Ley Núm. 15-2011.[10]

Por su parte, el Estado, por conducto del Procurador General de Puerto Rico, compareció a través

---

[9] 33 LPRA secc. 5370.
[10] 4 LPRA sec. 1632.

de una *Moción de desestimación y Alegato del Pueblo de Puerto Rico*. En síntesis, **solicitó la desestimación del recurso** debido a que el peticionario no puso en posición a este Tribunal para pasar juicio sobre lo acaecido en la vista preliminar en alzada, **pues no incluyó ninguna transcripción o exposición estipulada de la prueba vertida que le permitiera ejercer su función revisora.** En la alternativa, expresó que procedía la confirmación de la determinación impugnada, **toda vez que la prueba que se presentó en la vista preliminar en alzada fue suficiente en derecho.**

De esta forma, contando con el beneficio de la comparecencia de ambas partes, procedemos a resolver.

## II

### A.  Vista Preliminar

La Regla 23 de Procedimiento Criminal, *supra*, es la fuente estatuaria que gobierna los asuntos atinentes a la vista preliminar. El mecanismo provisto por esta regla es uno de rango estatutario que tiene como noción básica determinar la existencia o no de causa probable para creer que se ha cometido un delito por el acusado.[11] El propósito de la vista preliminar es evitar que se someta a un ciudadano arbitraria e injustificadamente a

---

[11] Véase, *Pueblo v. Andaluz Méndez*, 205 DPR 7 (2020); *Pueblo v. Nieves Cabán*, 201 DPR 853 (2019).

los rigores y penurias de un juicio en su fondo.[12]

En ese contexto, la vista preliminar queda instituida como una audiencia adversarial preliminar en la que se debe determinar si existe causa probable sobre dos asuntos: (1) la comisión del delito grave y (2) su conexión con el imputado.[13] Ahora bien, el Ministerio Público no está obligado a presentar toda la prueba de cargo que desfilará en el juicio. Por el contrario, su responsabilidad probatoria en esta etapa se limita a la presentación de una *scintilla* de evidencia que dé paso a una determinación *prima facie* sobre los dos aspectos mencionados.[14]

Una vez el Ministerio Público logre cumplir con esta carga probatoria, el magistrado que presida la vista deberá determinar causa probable por el delito imputado.[15] En comunión con lo anterior, a pesar de no estar obligado a presentar toda la evidencia de cargo, el Estado deberá tener presente que la prueba ofrecida en la vista debe ser una admisible en el juicio, conforme a los parámetros establecidos en nuestras Reglas de Evidencia, 32 LPRA Ap. V.[16]

Ahora bien, es importante tener presente que este

---

[12] Íd.; Véase, además, *Pueblo v. Fernández Rodríguez*, 183 DPR 770 (2011).
[13] *Pueblo v. Negrón Nazario*, 191 DPR 720 (2014).
[14] Íd., págs. 733-734.
[15] *Pueblo v. Andaluz Méndez*, supra, pág. 662.
[16] *Pueblo v. Santiago Cruz*, 205 DPR 7 (2020); *Pueblo v. Andaluz Méndez*, supra; *Pueblo v. Nieves Cabán*, supra.

proceso no supone la celebración de un mini juicio.[17] La vista preliminar opera en términos de probabilidades y su objetivo no es establecer la culpabilidad del imputado más allá de duda razonable, sino constatar que, en efecto, el Estado cuenta con una justificación adecuada para continuar con un proceso judicial más profundo.[18] Así, la determinación que se realiza en la vista preliminar no es una adjudicación final en los méritos del caso. De hecho, el imputado ni siquiera queda expuesto a ser convicto, ya que, al igual que sucede con la adjudicación final, corresponde propiamente a la etapa del juicio.[19]

Por otro lado, al igual que toda decisión de los foros judiciales, la determinación de causa probable en la vista preliminar goza de una presunción legal de corrección.[20] En ese sentido, cuando el imputado entienda que el Ministerio Público no cumplió con el deber probatorio que le corresponde en esa etapa, puede atacar la determinación de causa probable y rebatir la presunción de corrección, para lo cual tiene disponible el remedio provisto en la Regla 64(p) de Procedimiento Criminal, *supra*.[21]

---

[17] *Pueblo v. Guadalupe Rivera*, 206 DPR 616, 623 (2021); *Pueblo v. Nieves Cabán*, supra; *Pueblo v. Rivera Cuevas*, 181 DPR 699, 706 (2011).
[18] Íd.
[19] Íd.
[20] *Pueblo v. Guadalupe Rivera*, supra; *Pueblo v. Nieves Cabán*, supra.
[21] Íd.

**B.    Regla 64(p) de Procedimiento Criminal**

En sintonía con lo anterior, cuando un imputado entienda que el Ministerio Público no presentó prueba que vincule todos los elementos del delito con la persona acusada, podrá atacar la determinación de causa probable y rebatir la presunción de corrección de la cual gozan las determinaciones judiciales a través del mecanismo dispuesto en la Regla 64(p) de Procedimiento Criminal, *supra*.[22] De esta forma, es al acusado a quien le corresponde el peso de la prueba para establecer que la determinación de causa no fue correcta.[23]

Esta regla es, exclusivamente, el remedio procesal que tiene un acusado para impugnar la determinación de causa probable y solicitar la desestimación de la acusación cuando entienda que la misma fue presentada sin arreglo a la ley y a derecho.[24]

Una solicitud al amparo del mencionado estatuto procederá en dos escenarios: (1) cuando se infringió alguno de los derechos o requisitos procesales de la vista preliminar, o (2) cuando se determinó causa probable para acusar, pese a la ausencia total de prueba sobre alguno de los elementos del delito imputado, incluido entre estos, la prueba sobre la conexión del

---

[22] Íd.
[23] *Pueblo v. Nieves Cabán*, supra, pág. 867.
[24]   *Pueblo v. Guadalupe Rivera*, supra, pág. 651; *Pueblo v. Rivera Cuevas*, supra, pág. 707; *Pueblo v. Rivera Vázquez*, 177 DPR 868, 877 (2010).

acusado. Por ello, **es indispensable que el acusado persuada y demuestre al tribunal** que hubo ausencia total de prueba legalmente admisible respecto a alguno de los elementos del delito o en cuanto a su conexión con el delito imputado.[25] En ese sentido, el criterio rector es la ausencia total de prueba; esto es, que no se desfiló evidencia sobre el particular.[26] De no cumplirse con este requisito, no procederá la desestimación de la acusación.[27]

Por otro lado, al evaluar una moción de desestimación al amparo de la Regla 64(p) de Procedimiento Criminal, *supra*, el juzgador debe estar guiado por los siguientes criterios, a saber: (1) examinar la prueba de cargo y defensa vertidas en la vista preliminar, así como la prueba del acusado en apoyo de la moción; (2) determinar si esa prueba establece la probabilidad de que estén presentes todos los elementos del delito, así como la existencia de prueba que conecte al imputado con su comisión; (3) el hecho de que a juicio del magistrado la prueba presentada demuestre con igual probabilidad la comisión de un delito distinto al imputado, no debe dar base a una desestimación; y (4) solo en ausencia total de prueba sobre la probabilidad de que estén presentes y

---

[25] *Pueblo v. Guadalupe Rivera*, supra*; Pueblo v. Nieves Cabán*, supra; *Pueblo v. Andaluz Méndez*, supra.

[26] *Pueblo v. Nieves Cabán*, supra; *Pueblo v. Negrón Nazario*, 191 DPR 720 (2014).

[27] Íd.

probados uno o varios elementos del delito o de la conexión del imputado con tal delito, procede la desestimación de la acusación.[28]

En lo concerniente al juez o jueza que evalúa la moción de desestimación, hemos establecido que debe tener presente que no se trata de una nueva determinación de causa probable. De esta forma, si el tribunal estima necesario la celebración de una vista para dilucidar la moción, su tarea estará limitada a examinar la prueba presentada durante la vista en que se determinó causa probable para acusar. Evaluada tal prueba, el magistrado debe entonces determinar si hubo ausencia total de prueba sobre la comisión del delito; ya sea porque no se presentó alguna evidencia sobre un elemento del delito imputado o porque no se presentó alguna evidencia sobre la conexión del acusado con el delito. Solo ante una situación de ausencia total de prueba es que procede sustituir el criterio del magistrado que inicialmente halló causa para acusar.[29]

## C. Artículo 277 del Código Penal de Puerto Rico *vis a vis* el Art. 2 de la Ley Núm. 15-2011

El Art. 277 del Código Penal de Puerto Rico, *supra*, específicamente en su segundo párrafo, dispone que

> Toda persona confinada en una institución penal
> o juvenil que, sin estar autorizado, posea

---

[28] *Pueblo v. Rivera Cuevas*, supra.
[29] *Pueblo v. Nieves Cabán*, supra, citando a *Pueblo v. Negrón Nazario*, supra.

teléfonos celulares u otros medios de comunicación portátil, o cualquier otro objeto que pudiera afectar el orden o la seguridad de una institución penal o de cualquier establecimiento penal bajo el sistema correccional, dentro o fuera del mismo, será sancionado con pena de reclusión por un término fijo de tres (3) años.[30]

Como se puede apreciar, este estatuto prohíbe la introducción o posesión de objetos que pudieran afectar el orden o la seguridad de una institución penal. Cuando se trate de un confinado, para que se entienda cometido el delito antes mencionado, es indispensable que se prueben los siguientes elementos: (1) que la persona imputada esté confinada en una cárcel, y que; (2) sin autorización, (3) posea un celular o un objeto que pudiera afectar el orden o la seguridad de la institución penal.

Por su parte, el Art. 2 de la Ley Núm. 15-2011, dispone, en lo pertinente, lo siguiente:

> **La posesión** por una persona internada en una **institución penal** o juvenil, **de equipos de telecomunicación no autorizados,** incluyendo teléfonos celulares **y cualquier tipo de equipo o aditamento que permita transmisión de señales radiales o acceso a la red celular de comunicaciones o a una conexión inalámbrica a Internet que no sea el acceso provisto por la institución**, constituirá delito grave de cuarto grado, o la falta equivalente en el caso de un menor de edad.[31]

---

[30] 33 LPRA secc. 5370.
[31] 4 LPRA sec. 1632.

Este artículo fue aprobado específicamente para penalizar la posesión de equipos de telecomunicación u objetos que permitan el acceso a las redes de telecomunicación en una institución penal. Como se puede apreciar, además de los teléfonos celulares, este estatuto prohíbe, específicamente, la posesión de cualquier artefacto que haga las mismas funciones que un teléfono celular, así como cualquier objeto que pueda proveer funcionalidades de conexión a sistemas de comunicación. Por ello, se incluyó la frase, "**cualquier tipo de equipo o aditamento que permita transmisión de señales radiales o acceso a la red celular de comunicaciones o a una conexión inalámbrica a Internet que no sea el acceso provisto por la institución**".[32]

De hecho, el propósito cardinal de la Ley Núm. 15-2011, *supra*, según establecido en la Exposición de Motivos de esta pieza legislativa, es evitar las comunicaciones no autorizadas por los reclusos —entre ellos y con el exterior—, particularmente, por las implicaciones que estas comunicaciones tienen con la seguridad de la institución, así como también, con la seguridad de la población en general.[33] Lo anterior, responde a la creación de nuevas modalidades delictivas

---

[32] Íd.
[33] Véase, Exposición de Motivos Ley Núm. 15-2011, *supra.*

llevadas a cabo por los confinados mediante el uso de estos equipos.[34]

**D.    Principio de Especialidad**

El principio de especialidad establece que cuando en el ordenamiento jurídico existen dos o más disposiciones estatutarias que regulan en aparente conflicto la misma materia, la disposición especial prevalecerá sobre la general.[35] En ese sentido, **este principio descarta cualquier discreción que pueda tener el Estado sobre por cuál delito debe acusar**, **pues hace mandatorio la aplicación del estatuto especial sobre el general**.[36] Cuando decimos que las materias en controversia tienen que estar en conflicto, a lo que nos referimos es a que tales disposiciones no pueden ser aplicadas de manera simultánea.[37]

En el escenario en que la conducta prohibida y los elementos de ambos delitos, en esencia, aparenten ser los mismos, la relación de especialidad se determinará basada en las características y el propósito de ambos estatutos. De esta forma, el examen girará en torno a si una de las disposiciones estatutarias recibió un trato especial diseñado específicamente para la situación

---

[34] Íd.

[35] Véase, *Pueblo v. Cordero Meléndez*, 193 DPR 701 (2015) (Sentencia); *Pueblo v. Hernández Villanueva*, 179 DPR 872 (2010); Ley 146-2012, 33 LPRA secc. 5009, conocida como Código Penal de Puerto Rico.

[36] Íd.

[37] Véase, *Pueblo v. Cordero Meléndez*, supra, pág. 708.

comprendida. Así, pues, una ley no se considerará especial frente al Código Penal meramente por haber sido aprobada fuera de este, sino que el análisis requiere que se examine la pretensión y el trato que tuvo la Asamblea Legislativa para con esa pieza. De esta forma, si el trato especial que tuvo esa legislación está específicamente diseñado para la situación imputada, en efecto, nos encontramos ante una legislación especial.

En conclusión, el precepto especial siempre describirá de forma más completa el curso de acción antijurídico llevado a cabo por el sujeto.[38]

**E.   Apreciación de la prueba**

Por otra parte, y en consideración a la norma de corrección que cobija a las determinaciones realizadas por el Tribunal de Primera Instancia, **cuando un peticionario señala errores dirigidos a cuestionar la apreciación o suficiencia de la prueba, la naturaleza del derecho apelativo requiere que éste ubique al foro revisor en tiempo y espacio de lo ocurrido en el foro primario utilizando alguno de los mecanismos de recopilación de prueba oral, como lo son: (1) transcripción de la prueba, (2) exposición estipulada o (3) exposición narrativa.**[39]

---

[38] L.E. Chiesa Aponte, Derecho Penal Sustantivo, 2da ed., Estados Unidos, Pubs. JTS, 2013, pág. 90.
[39] Véanse, 4 LPRA Ap. XXII-B, R. 19, 29, 76; 4 LPRA Ap. XXII-A, R.20(G)(4)(E).

**Los tribunales de mayor jerarquía no pueden cumplir** a cabalidad **su función revisora sin que se le produzca, mediante alguno de estos mecanismos, la prueba que tuvo ante sí el foro primario.**

Tal como hemos reiterado en múltiples ocasiones, las disposiciones reglamentarias que gobiernan los recursos que se presentan ante el Tribunal de Apelaciones deben observarse rigurosamente.[40] Así, los abogados vienen obligados a dar fiel cumplimiento al trámite prescrito en las leyes y en los reglamentos aplicables para el perfeccionamiento de los recursos, y no puede quedar al arbitrio de los abogados decidir qué disposiciones reglamentarias aplican y cuándo.[41] De esta forma, **es tarea del peticionario presentar al foro revisor la prueba oral bajo la que se pretende impugnar las determinaciones del tribunal *a quo*.**

En atención a lo anterior, nuestro ordenamiento procesal apelativo provee los mecanismos necesarios para atender este tipo de asuntos. Por ejemplo, la Regla 29 del Reglamento del Tribunal de Apelaciones,[42] regula todo lo relacionado con la recopilación de la prueba oral ofrecida en un caso criminal. En lo pertinente, dispone que

---

[40] Véase, *Pueblo v. Valentín Rivera*, 197 DPR 636 (2017); *Hernández Maldonado v. Taco Maker*, 181 DPR 281 (2011).
[41] Íd.
[42] 4 LPRA Ap. XXII-B

(A) Cuando la parte apelante o peticionaria **estime que para resolver** una apelación o **un recurso** de certiorari **es necesario que el Tribunal de Apelaciones considere alguna porción de la prueba oral presentada ante el Tribunal de Primera Instancia**, someterá, en conformidad con los requerimientos que más adelante se exponen, uno de los documentos siguientes o una combinación de ellos: (1) transcripción; (2) exposición estipulada; (3) exposición narrativa.

(B) La parte apelante o peticionaria deberá, en el término de diez días de la presentación de la Apelación, acreditar que el método de reproducción de la prueba oral que utilizará es el que propicie la más rápida dilucidación del caso, pudiendo el tribunal determinar el método que alcance esos propósitos. (Énfasis suplido).[43]

Por su parte, y con relación a las transcripciones de la prueba oral, la Regla 76 del mismo reglamento establece, lo siguiente:

(A) Transcripción de la prueba oral en recursos de apelación y de *certiorari*

Una parte en una apelación o en un recurso de *certiorari* ante el Tribunal de Apelaciones notificará al Tribunal de Apelaciones no más tarde de diez días desde que se presentó el escrito de apelación o se notificó la expedición del auto solicitado, que se propone transcribir la prueba oral. En esa moción, la parte proponente expresará las razones por las cuales considera que la transcripción es indispensable y que propicia mayor celeridad en los procesos que la presentación de una exposición estipulada o una exposición narrativa.[44]

Asimismo, los requisitos de fondo y forma concerniente a los otros dos mecanismos de reproducción

---

[43] Íd.
[44] Íd.

de prueba oral, están instituidos en la Regla 76.1 del reglamento del foro intermedio.

De igual forma, la Regla 19 del Reglamento del Tribunal de Apelaciones, expresamente dispone que "cuando la parte apelante **haya señalado algún error relacionado con la suficiencia de la prueba testifical o con la apreciación errónea de ésta por parte del tribunal apelado, someterá una transcripción, una exposición estipulada o una exposición narrativa de la prueba**".[45]

También, es pertinente y necesario mencionar que, similar a las disposiciones reglamentarias antes reseñadas, el reglamento de nuestro Tribunal provee instancias específicas que atienden estos particulares. De forma concreta, la Regla 20 dispone lo siguiente:

> (4) Apéndice
>
> Se acompañará a la solicitud de certiorari un apéndice que cumplirá con lo dispuesto en la Regla 34 de este Reglamento y que contendrá una copia exacta y completa de los documentos siguientes:
>
> […]
>
> (E) **Si los errores señalados en el recurso se relacionan con la apreciación de la prueba, se incluirá una copia de la Exposición Narrativa de la Prueba presentada ante el Tribunal de Apelaciones o de la Transcripción de Evidencia,** si la hay. (Énfasis suplido).[46]

---

[45] Íd.
[46] 4 LPRA Ap. XXII-A, R.20(G)(4)(E).

Finalmente, es preciso señalar que, en <u>Graciani Rodríguez v. Garage Isla Verde, LLC</u>, 202 DPR 117 (2019), aunque en el contexto de un proceso administrativo, similarmente se impugnó la apreciación de la prueba y sobre ello, señalamos lo siguiente:

> **[c]uando la impugnación de las determinaciones de hecho se base en la prueba oral desfilada, así como en la credibilidad** que le mereció a la agencia administrativa, este Tribunal ha expresado que **"[e]s imprescindible que se traiga a la consideración del foro revisor la transcripción de la vista celebrada o una exposición narrativa de la prueba"**. (Cita omitida). Dicho de otro modo, **los tribunales apelativos no deben intervenir con la apreciación de la prueba oral** hecha por la agencia recurrida **cuando no se tiene forma de evaluar la evidencia presentada debido a que la parte promovente no elevó una transcripción o una exposición narrativa de tal prueba**. J.A. Echevarría Vargas, Derecho administrativo puertorriqueño, San Juan, Ed. SITUM, 2017, pág. 325. (Énfasis suplido).[47]

De hecho, en dicha ocasión reseñamos lo que mediante sentencia expresamos en <u>García Fantauzzi v. Dir. Adm. Trib.</u>, 182 DPR 560 (2011), referente a que el foro intermedio **había errado al revocar una determinación sin haber estado en posición de hacerlo, toda vez que "no tuvo el beneficio de examinar la transcripción de la prueba oral desfilada durante el proceso administrativo"** y, por lo tanto, debía brindarle deferencia a la determinación inicial.

---

[47] *Graciani Rodríguez v. Garage Isla Verde, LLC*, 202 DPR 117, 129-130 (2019).

En fin, ante la presunción de corrección que revisten las determinaciones del foro primario, quien desee impugnar las mismas deberá colocar al tribunal revisor en posición de atender correctamente sus planteamientos sobre la apreciación y la credibilidad de la prueba oral desfilada.

**III**

El peticionario solicita la desestimación del cargo que pesa en su contra amparado en que, presuntamente, hubo ausencia total de prueba en la vista preliminar en alzada. Como habíamos adelantado, no le asiste la razón. Ahora bien, para poder disponer del recurso responsablemente, es necesario que nos expresemos sobre varios asuntos particulares.

**A.**

En primer lugar, si bien el argumento medular del señor Pérez Delgado estriba mayormente en que hubo ausencia total de prueba sobre los elementos del delito, es necesario atender con prioridad lo discutido por éste con relación a la aparente especialidad que posee el Art. 2 de la Ley Núm. 15-2011, *supra*, frente al Art. 277 del Código Penal de Puerto Rico.

Al estudiar detenidamente las disposiciones de estos estatutos, nos damos cuenta de que **ambos** le prohíben a las personas confinadas en las instituciones

carcelarias de la isla poseer equipos de telecomunicaciones no autorizados. Como vimos, por un lado, el Art. 277 del Código Penal de Puerto Rico, *supra*, establece como delito el hecho de que **un confinado posea teléfonos celulares u otros medios de comunicación portátil** que puedan afectar el orden o la seguridad de una institución penal.[48]

Mientras que, por otro lado, el Art. 2 de la Ley Núm. 15-2011, *supra*, en lo pertinente, penaliza el hecho de que **un confinado posea equipos de telecomunicación no autorizados, incluyendo teléfonos celulares y cualquier tipo de equipo o aditamento que permita transmisión de señales radiales, acceso a la red celular o al internet**.[49]

Si bien ambos estatutos prohíben la posesión de equipos de telecomunicación no autorizados en nuestras cárceles, la realidad es que la prohibición tipificada en el Art. 277 del Código Penal, es una de **carácter general en torno a la mera posesión de teléfonos celulares u otros medios de comunicación portátil** u objetos que ponen en riesgo la seguridad de la institución. Por su parte, la prohibición establecida en el Art. 2 de la Ley Núm. 15-2011, *supra*, va dirigida, específicamente, con mayor detalle y precisión, a penalizar la posesión de equipos de telecomunicación,

---

[48] 33 LPRA sec. 5370.
[49] 4 LPRA sec. 1632.

así como cualquier equipo o **aditamento que permita la transmisión de señales radiales o acceso a la red celular de comunicaciones o a una conexión inalámbrica a Internet.**

Según se desprende de la Exposición de Motivos de la Ley Núm. 15-2011, *supra*, **el objetivo expreso de esta legislación** es restringir el uso no autorizado de equipos de telecomunicaciones para así evitar la proliferación y continuación de actividades criminales dentro de las instituciones penales, como lo sería, por ejemplo, los fraudes vía telefónica; la intimidación de testigos; el hostigamiento a víctimas; la administración de los puntos de venta de drogas, y hasta ordenar asesinatos, entre otras. Ciertamente, todo esto, además de crear un riesgo para la seguridad y el bienestar público, constituye una manera de burlar las reglas de disciplina y conducta de las instituciones, que de por sí prohíben la posesión y el uso de equipos no autorizados.[50]

Como discutimos en la sección que antecede, al momento de determinar la especialidad de una ley hay que estudiar, primeramente, las conductas prohibidas en virtud de los elementos que la constituyen. Ahora bien, cuando por diseño legislativo ambas piezas aparenten requerir los mismos elementos del delito, la relación de

---

[50] Véase, Exposición de Motivos de la Ley Núm. 15-2011, *supra*. (4 LPRA 1631 *et seq*.).

especialidad se establecerá según las características y el propósito de ambos estatutos. Es decir, en casos como este lo importante es determinar si la Asamblea Legislativa pretendió otorgarle un trato especial y detallado a la conducta similarmente legislada.

Por ello, es evidente que el trato que nuestra Asamblea Legislativa le otorgó a la Ley Núm. 15-2011, *supra*, fue uno especial. Esto es, con mayor precisión y detalle respecto a la conducta de poseer un equipo de telecomunicación o algún complemento de estos, frente al delito general del Código Penal de poseer un objeto prohibido que pueda afectar el orden o la seguridad de una institución carcelaria.

En ese sentido, cuando de una situación de hechos se desprenda que el equipo incautado es uno que permite acceso a las telecomunicaciones, automáticamente, se activa el principio de especialidad, de forma tal que al momento de imputar la comisión de un delito, **el Estado carecerá de discreción y vendrá obligado a aplicar las disposiciones de la Ley Núm. 15-2011, *supra*.**

De hecho, en Pueblo v. Cordero Meléndez, 193 DPR 701 (2015) (Sentencia), este Tribunal se encontró con un planteamiento, en esencia, idéntico al que hoy atendemos. En aquella ocasión se cuestionaba la aplicación del principio de especialidad, precisamente, sobre los mismos delitos que aquí atendemos. Si bien es

cierto que el citado caso no estableció un precedente jurídico, estimamos necesario remarcar que las tres opiniones que acompañaron dicha *Sentencia* ⸺dos de conformidad y una disidente⸺ concluyeron que ambos estatutos regulaban la misma conducta.[51] Lo que es más, tanto la Opinión de Conformidad que emitió el compañero Juez Asociado señor Kolthoff Caraballo (a la que se unieron los Jueces Asociados señores Martínez Torres y Feliberti Cintrón) como la Opinión Disidente elaborada por el Juez Asociado señor Estrella Martínez, coincidieron en que el principio de especialidad aplicaba de manera diáfana en situaciones como la de autos.

En lo pertinente a nuestro caso, el objeto que le fue ocupado al peticionario fue un *SIM Card*. En términos generales, y como correctamente aceptó el peticionario, una tarjeta *SIM* es un aparato o aditamento que actúa como el cerebro de un teléfono, pues este conecta al móvil con su proveedor de red inalámbrica, permite que tenga acceso a un sistema de comunicación para hacer llamadas, enviar mensajes de texto, usar los servicios de internet y almacena información de los contactos, sus números de teléfono, entre otras cosas. Por lo tanto, es incuestionable que la capacidad práctica que posee un

---

[51] La Jueza Presidenta Oronoz Rodríguez emitió una Opinión de Conformidad. El Juez Asociado señor Kolthoff Caraballo emitió una Opinión de Conformidad. El Juez Asociado señor Estrella Martínez emitió una Opinión Disidente.

*SIM Card* lo posiciona como un elemento integral dentro de las telecomunicaciones digitales de estos tiempos.

De acuerdo con lo anterior, es evidente que la conducta y los hechos por los cuales se acusó al peticionario se encuentran descritos con mayor especificidad en el Art. 2 de la Ley Núm. 15, *supra*. **Así las cosas, tiene razón el peticionario en que el delito por el cual debe ser acusado es el estatuido en el Art. 2 de la Ley Núm. 15,** *supra*, y no el del Código Penal.

Por ello, conforme con lo dispuesto en las Reglas 36 y 38 de Procedimiento Criminal,[52] lo que procede es que se enmiende la acusación para que refleje la cita correcta, toda vez que la imperfección en esta acusación no es un defecto que perjudica los derechos sustanciales del acusado. Recordemos que la calificación del delito hecha por el Fiscal no es definitiva, ya que son los hechos alegados, y no las etiquetas formales, los que

---

[52] Por un lado, la Regla 36 de Procedimiento Criminal, 34 LPRA Ap. II dispone que "**Una acusación** o denuncia **no será insuficiente,** ni podrán ser afectados el juicio, la sentencia o cualquier otro procedimiento basado en dicha acusación o denuncia, **por causa de algún defecto, imperfección u omisión de forma que no perjudicare los derechos sustanciales del acusado**".

Por su parte, el inciso (a) de la Regla 38 de Procedimiento Criminal, 34 LPRA Ap. II, establece lo siguiente: "Subsanación de defectos de forma. Si la acusación, la denuncia o un escrito de especificaciones adolecieren de algún defecto, imperfección u omisión de forma aludido en la Regla 36, **el tribunal podrá permitir en cualquier momento las enmiendas necesarias para subsanarlo**. En ausencia de enmienda, dicho defecto, imperfección u omisión se entenderá subsanado una vez rendido el veredicto del jurado o el fallo del tribunal".

deben servir para identificar el delito imputado y la disposición estatutaria envuelta.[53]

Ahora bien, este pronunciamiento no dispone de la controversia. Por ello, abundamos.

## B.

Como complemento a lo anterior, el peticionario señala que el delito estatuido en el Art. 2 de la Ley Núm. 15-2011, *supra*, requería que el Ministerio Público presentara prueba sobre que el *SIM Card* era funcional, o sea, que, en efecto funcionaba. Es decir, que tenía data almacenada y que tenía que ser insertada en un teléfono móvil para comprobar que le permitía a este operar bajo el número telefónico asociado a la tarjeta, porque de lo contrario, el *SIM Card* era "meramente una tarjeta plástica o un pedazo de cartón". **Tal acepción es totalmente incorrecta**, y va en contra de las nociones más básicas de la hermenéutica y del más elemental propósito del estatuto en cuestión.

Cuando el Art. 2 de la Ley Núm. 15-2011, *supra*, establece una prohibición sobre "*cualquier tipo de equipo o **aditamento que permita transmisión** de señales* [...]", a lo que en realidad se refiere la frase de "permita transmisión", desde un punto de vista probatorio, es a que el objeto ocupado, debe **tener la**

---

[53] Véanse, *Pueblo v. Cordero Meléndez, supra; Pueblo v. Candelaria Couvertier*, 100 DPR 159, 161 (1971); *Pueblo v. Bermúdez*, 75 DPR 760, 763-764 (1954).

**capacidad** de ejercer esas funciones de manera ordinaria, no de que funcione. O sea, que **la naturaleza misma de ese objeto**, bajo su concepción natural de utilidad y propósito, **posibilite la conexión** o acceso a las distintas formas de comunicación.[54]

En términos sencillos, esa frase **no requiere que el artefacto incautado efectivamente funcione y que, en ese momento preciso, trasmita señales o se conecte a las redes de comunicación. Sino más bien, lo que se tiene que probar es que el objeto tiene la capacidad y la habilidad para hacer ese tipo de funciones**. He ahí la diferencia medular entre la capacidad del objeto *vis a vis* su funcionalidad. Sobre este particular, llamamos la atención a lo expresado por varios jueces en <u>Pueblo v. Cordero Meléndez</u>, *supra*. El Juez Asociado señor Kolthoff Caraballo, en su Opinión de Conformidad, expresó que "el Estado no solo tendrá que probar la posesión del artefacto, sino también **la capacidad del mismo de ejercer las funciones** típicas del teléfono celular".[55]

Por su parte, en su Opinión de Conformidad, la Jueza Presidenta Oronoz Rodríguez expresó que **la frase `*posesión*'** de equipos de telecomunicación no

---

[54] A manera de ejemplo, lo que se pretende es que se pruebe que el objeto incautado pueda realizar funciones que propicien la comunicación interpersonal, ya sea a través de redes celulares o de internet, de forma tal que se elimine cualquier posibilidad de que el objeto sea un mero complemento o equipamiento accesorio que no provea beneficio comunicativo alguno.

[55] *Pueblo v. Cordero Meléndez*, 193 DPR 701, 727 (2015) (Sentencia).

**autorizados, "no implica que se tiene que demostrar que el celular estaba conectado**, sino que lo menciona como un ejemplo de lo que constituye un equipo de telecomunicación en sí".[56]

Por su parte, y en una línea similar, el Juez Asociado señor Estrella Martínez expresó que "[u]na simple lectura del artículo lleva a concluir que [...] **se requiere que el equipo tenga la posibilidad de transmitir señales o acceder a la red de comunicaciones o a internet**".[57]

No olvidemos que **la prohibición** que pretende este estatuto **va dirigida contra la posesión del equipo u objeto, no a su funcionalidad.**

A manera de ejemplo, el primer objeto expresamente prohibido por esta ley son los teléfonos celulares. El texto de la legislación es claro por demás y ejemplifica que el teléfono celular es un equipo de telecomunicación y que, como tal, **tiene la capacidad de conectarse** a las redes de comunicación. Por ello, se encuentra expresamente identificado como un equipo prohibido. Ahora bien, en caso de que el objeto ocupado sea cualquier otro equipo o aditamento, como en nuestro caso lo es el *SIM Card*, lo que se debe demostrar es que dicho objeto **tiene la capacidad de permitir** la transmisión de

---

[56] *Pueblo v. Cordero Meléndez*, supra.
[57] Íb., pág. 747.

señales radiales, acceso a la red celular de comunicaciones o a una conexión de Internet para que se entienda cometido el delito.

Para contextualizar esta discusión, examinemos los ejemplos siguientes: Supongamos que se incauta un teléfono celular en una cárcel, pero este no tiene *SIM Card*. Si partimos del errado supuesto de que el Estado tiene que probar que el objeto, en efecto funciona y se conecta a las redes de comunicación, la posesión de este teléfono no constituiría delito porque un celular sin un *SIM Card* no puede conectarse o acceder a las redes de telecomunicaciones. Es decir, al no tener *SIM Card*, sus funciones de telecomunicación son nulas y por ende, no se cometería el delito.

Otro supuesto imaginario que ejemplifica el absurdo jurídico que representa requerir que el objeto funcione es el siguiente: Imaginemos que en una cárcel les incautan teléfonos celulares a dos (2) reclusos diferentes; uno tiene la tarjeta "SIM" pero el otro no. Bajo la equivocada teoría del peticionario, solamente uno de los imputados cometería el delito a pesar de que ambos poseían equipos no autorizados. De esta forma, sería extremadamente fácil burlar el sistema. Tal

acepción es, sin duda alguna, contraria a la intención legislativa.[58]

Imaginemos el pasado escenario, pero a la inversa, como precisamente ocurrió en este caso. Se ocupó una tarjeta *SIM Card*, mas no así un teléfono celular. Poder esquivar las consecuencias que impone la ley, bajo la errada teoría del peticionario de que los objetos incautados tienen que efectivamente funcionar, sería tan fácil como solicitar una nueva tarjeta *SIM* al proveedor, lo que haría inoperante a la tarjeta ocupada.

No debemos olvidar que la **intención expresa** de esta pieza legislativa **es penalizar <u>la posesión</u> de equipos no autorizados**, en aras de mantener la seguridad, disciplina y buena conducta dentro de las instituciones carcelarias de nuestra isla y así evitar los riesgos que estos equipos o aditamentos provocan dentro y fuera de los centros penitenciarios.

Otro ejemplo que pone de manifiesto lo incongruente que sería requerir que el objeto funcione y se conecte a las distintas redes de comunicación, es el caso en el que se incaute un teléfono celular, *con un SIM Card*, pero sin su batería o sin su cargador. Como el artefacto no puede encenderse, obviamente, no podría conectarse a las redes

---

[58] Por cierto, en su Opinión de conformidad en <u>Pueblo v. Cordero Meléndez</u>, *supra*, el compañero Juez Asociado señor Kolthoff Caraballo utilizó este mismo ejemplo. Ciertamente, ejemplifica cuán errónea y desacertada es la teoría de requerir que el objeto, en efecto, funcione y transmita señales en esos momentos.

de comunicación y, lastimosamente, no se podría probar que, en efecto, funcionaba y que permitía comunicación, por lo que no se cometería el delito.

Todos los escenarios anteriormente esbozados reflejan lo erróneo y simplista del razonamiento del peticionario y cuán lejos se encuentran del propósito legislativo de la Ley 15-2011, *supra*. Nuevamente, recordemos, que la **intención expresa de este estatuto es _penalizar la posesión_ de equipos de telecomunicaciones dentro de las instituciones penales del país**.[59]

En fin, requerir que el objeto ocupado funcione y efectivamente conecte al poseedor con una red celular, radial o de internet, **desvirtúa por completo el propósito mismo de la Ley 15-2011, *supra***. En ese sentido, y a manera de recapitulación, el Ministerio Público no tenía que probar que efectivamente el *SIM Card* funcionaba y que, concretamente, conectaba un teléfono celular con una red de telecomunicación. **Lo que sí tiene que probar el Ministerio Público es que ese objeto ocupado *tiene la capacidad* de ejercer tareas de conexión con las distintas redes**. Lo anterior se puede

---

[59] Tal como reconoció el Juez Asociado señor Kolthoff Caraballo en su Opinión de Conformidad en *Pueblo v. Cordero Meléndez*, supra, al extraer la porción explicativa del artículo en cuestión, el mismo leería así: "La posesión por una persona internada en una institución penal o juvenil, de equipos de telecomunicación no autorizados, constituirá delito grave de cuarto grado, o la falta equivalente en el caso de un menor de edad". Tal lectura recoge en esencia, lo que el legislador pretendió con esta ley, motivo que se encuentra diáfano en la exposición de esta legislación.

lograr inquiriendo sobre: (1) qué clase de objeto es; (2) cuál es su utilidad; (3) cómo se instala; (4) cómo se conecta; (5) cómo permite acceso a las redes de comunicación; entre otras.

Ahora bien, a la luz de lo antes pronunciado, **<u>nos resta por dilucidar si en la vista preliminar en alzada que se celebró contra el señor Pérez Delgado hubo ausencia total de prueba</u>**. Por las razones que explicaremos a continuación, **la respuesta obligada a este cuestionamiento <u>es en la negativa</u>**. Nos explicamos.

## C.

Es harto conocido que, al solicitar la desestimación de una causa basado en el fundamento de ausencia total de prueba, **es el propio acusado quien tiene el peso de** demostrar que, en efecto, no se desfiló prueba alguna sobre ello. Lo anterior, responde primordialmente, a la presunción de corrección que cobija a las determinaciones judiciales. Por esto, **es imperativo que quien impugne las determinaciones del foro primario o categorice como errónea la apreciación o suficiencia de la prueba vertida, reproduzca la prueba que tuvo ante sí el juzgador de instancia.**

Precisamente, ese es el escollo con el que se encuentra el petitorio del señor Pérez Delgado, **pues este no reprodujo prueba alguna que nos ubicara en posición de evaluar la evidencia desfilada en sala de**

**forma tal que derrotara la presunción de corrección que alberga la determinación del foro primario.** Sencillamente, el peticionario descansó, exclusivamente, en sus propias alegaciones y conclusiones.

Su argumento principal se cimienta en que el Estado no presentó prueba suficiente para sostener una determinación de causa. Sin embargo, al examinar el expediente, **no encontramos que este haya incluido documento alguno** ——*como lo sería una* <u>*transcripción estipulada*</u> *o una* <u>*exposición narrativa estipulada, tal como lo exige la práctica y reglamentación apelativa puertorriqueña*</u>—— **que nos ubique en una posición favorable para examinar lo que ocurrió en el foro primario**. **Indudablemente, tal ausencia impide que ejerzamos nuestra función revisora responsablemente.**

En su recurso, el señor Pérez Delgado se limita, simplemente, a realizar un recuento procesal de los hechos y alude a generalidades tales como: (i) "*el Ministerio Público no aportó prueba alguna de que la tarjeta fuera capaz de almacenar data, ni que tuviera data almacenada […]*";[60] (ii) "*no presentó prueba alguna en la vista preliminar en alzada de que la tarjeta sim tuviera información almacenada, […] ni que estuviera activada ni que fuera capaz de hacer funcionar un*

---

[60] Alegato del peticionario, pág. 5.

*teléfono celular*";[61] (iii) "*el Ministerio Público no presentó prueba alguna con respecto a si la tarjeta sim funcionaba o era capaz de funcionar, lo que era de fácil determinación*",[62] entre otras, para sustentar su reclamo de ausencia total de prueba sobre los elementos del delito imputado. **Este tipo de relatos unilaterales son los que, precisamente, nuestro ordenamiento procesal apelativo pretende evitar al proveer mecanismos de reproducción de prueba <u>que garantizan la confiabilidad</u>** del proceso para todas las partes.

De este modo, tal como hemos reconocido en ocasiones anteriores, los tribunales apelativos no debemos intervenir con la apreciación de la prueba oral que haga el juzgador primario cuando no tengamos forma alguna de evaluar la evidencia que allí se vertió debido a que la parte peticionaria no presentó una transcripción o una exposición narrativa estipulada de dicha prueba. Así, cuando no se coloque al tribunal revisor en posición de ejercer adecuada y responsablemente su función revisora, **como efectivamente sucedió en este caso**, prevalecerá la norma de deferencia y presunción de corrección sobre las determinaciones del tribunal primario.

---

[61] Id., pág. 13.
[62] Íd., pág. 15.

**IV**

Por los fundamentos expresados en esta Opinión, se confirma la determinación recurrida, aunque por un fundamento distinto. En consecuencia, se ordena la enmienda del pliego acusatorio contra el peticionario para que, conforme con lo aquí discutido, se impute el hecho delictivo al amparo del Art. 2 de la Ley Núm. 15-2011, *supra*. Completado este trámite, podrá el Tribunal de Primera Instancia proceder con un nuevo acto de Lectura de Acusación y con el juicio en su fondo.

Se dictará Sentencia de conformidad.

Edgardo Rivera García
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| El Pueblo de Puerto Rico Recurrido | | |
|---|---|---|
| v. | CC-2020-0477 | *Certiorari* |
| Reynaldo Pérez Delgado Peticionario | | |

**SENTENCIA**

En San Juan, Puerto Rico, a 23 de marzo de 2023.

Por los fundamentos expuestos en la *Opinión* que antecede, la que se hace formar parte íntegra de la presente *Sentencia*, se confirma la determinación recurrida, aunque por un fundamento distinto. En consecuencia, se ordena la enmienda del pliego acusatorio contra el peticionario para que, conforme con lo discutido en la *Opinión* que se acompaña, se impute el hecho delictivo al amparo del Art. 2 de la Ley Núm. 15-2011, *supra*. Completado este trámite, podrá el Tribunal de Primera Instancia proceder con un nuevo acto de Lectura de Acusación y con el juicio en su fondo.

Lo acordó el Tribunal y certifica la Subsecretaria del Tribunal Supremo. La Jueza Presidenta Oronoz Rodríguez disiente y emite las expresiones siguientes:

Difiero de la conclusión a la cual llega la Opinión mayoritaria sobre que el Art. 2 de la Ley Núm. 15-2011 penaliza la posesión de un SIM Card, sin más.

En mi Opinión concurrente en Pueblo v. Cordero Meléndez, 193 DPR 701, 727 (2015), expresé que "[l]a frase 'posesión [...] de equipos de telecomunicación no autorizados, incluyendo teléfonos celulares y cualquier tipo de equipo o aditamento que permita transmisión de señales radiales o acceso a

la red celular de comunicaciones o a una conexión inalámbrica a Internet', incluida en el Art. 2 de la Ley Núm. 15, no implica que se tiene que demostrar que el celular estaba conectado, sino que lo menciona como un ejemplo de lo que constituye un equipo de telecomunicación en sí". Esto así porque el teléfono celular es un equipo de telecomunicación y que, como tal, tiene la capacidad de conectarse a la red celular de comunicaciones.

Sin embargo, en aquel momento distinguí entre cuando se incauta un teléfono celular y cuando se incauta otro equipo o aditamento que no sea un celular, como lo sería un SIM Card. La segunda situación —cuando se incauta un SIM Card— simplemente no está regulada por el Art. 2 de la Ley Núm. 15-2011. Del texto del referido artículo surge expresamente que la posesión de un celular está prohibida. No obstante, no se menciona explícitamente una prohibición a la posesión de un SIM Card, sino a un objeto con la capacidad de transmitir señales radiales o acceso a la red celular de comunicaciones o a una conexión inalámbrica a Internet. Un SIM Card, por si solo, no es un objeto de la naturaleza que prohíbe la disposición en cuestión. El SIM Card solamente es capaz de transmitir señales radiales o acceso a la red celular de comunicaciones o a una conexión inalámbrica a Internet en conjunto con un teléfono celular compatible con el SIM Card. El Art. 2 de la Ley Núm. 15-2011 no prohíbe la posesión de un objeto que, en conjunto con un celular, tenga las capacidades ahí descritas. Entonces, haciendo una lectura cónsona con el principio de legalidad que impera en el Derecho Penal, es forzoso concluir que la Asamblea Legislativa solamente prohibió la posesión de objetos que tienen, por si solos, las capacidades descritas en el referido artículo. Si la Asamblea Legislativa hubiese tenido la intención de prohibir objetos que, junto con un celular, tuviesen las capacidades ahí descritas, entonces lo hubiese expresado de manera inequívoca.

Al equiparar la posesión de un SIM Card a la posesión de un teléfono celular, una

mayoría de este Tribunal comete el error lógico de entender que un elemento singular de un objeto es equivalente al objeto entero. A modo de ejemplo, podemos analizar cómo se trata la portación de armas y de municiones en la Ley 169-2019, conocida como la Ley de Armas de Puerto Rico de 2020. No hay duda de que, igual que un SIM Card es necesario para utilizar un celular, es necesario tener municiones para poder utilizar un arma de fuego. Sin embargo, nótese que la posesión de armas de fuego sin licencia se prohíbe en el Art. 6.08, mientras que la posesión de municiones se regula en el Art. 6.22 de la misma ley. Es decir, la ley reconoce que la posesión de una es conducta distinguible a la posesión de otra, a pesar de que ambas son necesarias para poder utilizar el arma de fuego. No sería correcto acusar a una persona por posesión ilegal de un arma de fuego cuando solamente se le incautan municiones. De la misma manera, no sería correcto penalizar a una persona como si hubiese estado en posesión de un teléfono celular, cuando solamente se le incautó un SIM Card.

Obsérvese que esto no implica que la posesión de un SIM Card no conlleve consecuencias, pues la institución carcelaria puede penalizar su posesión, sin más, por parte de un confinado si así lo dispone algún reglamento interno. Mis expresiones se circunscriben a analizar el texto del Art. 2 de la Ley Núm. 15-2011 y la conducta que la Asamblea Legislativa prohibió. Ciertamente las instituciones carcelarias tienen la prerrogativa de promulgar reglamentos que prohíban la posesión de un SIM Card, sin más, y de entablar un proceso disciplinario administrativo en contra de cualquier confinado que viole esos reglamentos.

Por lo aquí expuesto, difiero con lo expresado en la Opinión Mayoritaria sobre que la posesión de un SIM Card es suficiente para acusar a una persona por violación al Art. 2 de la Ley 15-2011.

El Juez Asociado señor Estrella Martínez disiente de la *Opinión mayoritaria* y hace constar la expresión siguiente:

La *Opinión* que hoy emite este Tribunal tiene el efecto infortunado de dejar a medias la consecución de uno de nuestros cometidos más imperiosos: salvaguardar el debido proceso de ley que cobija a todas las personas que son acusadas de delito en nuestro ordenamiento jurídico.

Y es que, a pesar de reconocer el error fatal del Estado en su afán de procesar al Sr. Reynaldo Pérez Delgado (señor Pérez Delgado) bajo la disposición penal equivocada en desafío abierto al principio de especialidad, la mayoría de los miembros de este Foro refrenda el que se pretenda corregir este acto con una mera enmienda a la acusación. Por las mismas razones que esbocé en mi *Opinión disidente* en *Pueblo v. Cordero Meléndez*, 193 DPR 701, 731 (2015), afirmo que procedía la desestimación de la acusación.

Lo que es peor, la posición mayoritaria también consigue con éxito alivianar el peso que nuestro ordenamiento le impone al Estado de probar todos los elementos del delito al concluir que no existe necesidad de probar la capacidad del *Sim Card* ocupado para permitir la transmisión de señales o acceso a la red de comunicaciones que proscribe el Art. 2 de la Ley Núm. 15-201, 4 LPRA sec. 1632. Aunque la Mayoría reconoce que, en efecto, el Estado viene obligado a demostrar que el objeto ocupado tiene, en términos generales, la capacidad de ejercer tareas de conexión, esta evade atender la suficiencia de la prueba con respecto a este asunto al indicar que la ausencia de una transcripción o exposición narrativa de la prueba le impide realizar su función revisora. Ello, a pesar de que del expediente surge que ambas partes ofrecieron resúmenes de lo expresado durante la *Vista preliminar en alzada* por los testigos del Estado en sus respectivos escritos y, además, que, por tratarse de un tribunal unificado, nada prevenía que este Tribunal obtuviera la regrabación de los procedimientos del tribunal.

En fin, por entender que este Tribunal erró en sus conclusiones y que procedía desestimar la acusación que pesa en contra del señor Pérez Delgado, disiento."

El Juez Asociado señor Colón Pérez disiente y emite las siguientes expresiones:

En el presente caso estábamos llamados a evaluar **exclusivamente** el señalamiento de error articulado por el Sr. Reynaldo Pérez Delgado (en adelante, "señor Pérez Delgado") en su recurso de *certiorari* el cual iba dirigido a cuestionar la suficiencia de la prueba presentada por el Ministerio Público, ante el Tribunal de Primera Instancia, para establecer todos los elementos del delito tipificado en el Art. 277 del Código Penal de Puerto Rico (33 LPRA sec. 5370). Dicho delito le fue imputado a éste en determinado proceso criminal, toda vez que en cierto registro de la celda en que se encuentra confinado presuntamente se le ocupó un "SIM card", tarjeta que sirve para ser utilizada en los dispositivos de telecomunicaciones.

Así pues, frente a un señalamiento de error dirigido a la apreciación de la prueba, le correspondía a este Tribunal determinar -- en primera instancia -- si el peticionario lo había puesto en posición de ejercer dicha tarea, bien sea porque no acompañó una transcripción de la prueba desfilada ante el foro primario, una exposición narrativa de esta, o una exposición estipulada de la misma. Incluso, por tratarse aquí de un confinado, al momento de ejercer la anterior tarea, correspondía plantearnos si era necesario que este Tribunal obtuviera la regrabación de los procedimientos celebrados ante el foro primario. **Ello, máxime cuando al parecer el señor Pérez Delgado podía tener razón en su planteamiento.** Lamentablemente, ese no fue el curso seguido por una mayoría de mis compañeros y compañera de estrado.

Y es que, evaluado el señalamiento de error presentado por el señor Pérez Delgado, éstos y ésta -- **se van más allá de los asuntos ante nuestra consideración** -- y -- **sin nadie haberlo solicitado** -- determinan que, en virtud del principio de especialidad, hubo un error en la acusación, pues, correspondía acusar a éste último por el delito tipificado en el Art. 2 de la Ley Núm. 15-2011 (4 LPRA sec. 1632), y no por el Art. 277 del Código Penal de 2012, *supra.* En virtud de ello, ordenan que se enmiende el

pliego acusatorio presentado en contra del señor Pérez Delgado y se devuelva el caso al Tribunal de Primera Instancia para la continuación de los procedimientos de conformidad con lo aquí sentenciado.

De dicho proceder, enérgicamente disentimos. Emprender ese camino no era nuestra tarea".


Bettina Zeno González
Subsecretaria del Tribunal Supremo